*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DARRON HEREFORD,

> *Petitioner-Appellee,*

*v.*

No. 07-1507

MILLICENT WARREN,

> *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 04-40293—Paul V. Gadola, District Judge.

Argued and Submitted: January 29, 2008

Decided and Filed: August 7, 2008

Before: SILER, CLAY, and COOK, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. **ON BRIEF:** Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Mark N. Awada, Warren, Michigan, for Appellee.

COOK, J., delivered the opinion of the court, in which SILER, J., joined. CLAY, J. (pp. 10-16), delivered a separate dissenting opinion.

---

**OPINION**

---

COOK, Circuit Judge. Certain facets of criminal proceedings are so critical that the absence of a criminal defendant's lawyer at those stages renders the proceedings inherently flawed. *See United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). The Michigan Court of Appeals held that a sidebar discussion between the prosecutor and judge during Petitioner Darron Hereford's bench trial was not one of those critical stages, and that any error arising from defense counsel's absence was harmless. The district court granted habeas relief after concluding that the state court's holding represented an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). We disagree and reverse.

1

## I.

Michigan charged Darron Hereford, Alvin Smith, and Kyle Davis with armed robbery of the Hungry Howie's pizzeria where Hereford worked. Mich. Comp. Laws § 750.529. Smith's separate trial resulted in his conviction. Hereford and Davis stood trial together, with Davis before a jury and Hereford before the bench. The Michigan Court of Appeals summarized the evidence against Hereford as follows:

> Both the assistant manager and the restaurant's part owner recalled that the assistant manager had worked with defendant for at least a month, on several occasions each week. The assistant manager testified repeatedly and with certainty that he recognized defendant as one of the robbers when defendant's mask briefly slipped from his face. A police officer who responded to the restaurant after the robbery testified that the assistant manager positively identified defendant as a participant in the robbery.

*People v. Hereford*, No. 227296, 2003 WL 193523, at *1 (Mich. Ct. App. Jan. 28, 2003).

Smith, who by this time was convicted but not sentenced, also testified against Hereford. When the prosecutor called Smith to the stand and the judge asked whether he understood his privilege against self-incrimination, Smith indicated that he wanted to consult his absent attorney. The court halted the trial to track down the lawyer, at which time Hereford's lawyer, William Mitchell, attended an arraignment in another courtroom. The prosecutor also left, and in the hallway he spoke to Smith and Smith's mother in the presence of the lead detective. Smith's mother lodged her concern that her son did not understand his rights.

Armed with this tip, the prosecutor returned and (with Mitchell still gone) approached the bench alongside codefendant Davis's lawyer, Sharon Woodside:

> **Prosecutor**: Your Honor, may Ms. Woodside and I approach? Maybe she can speak on behalf of Mr. Mitchell?[1]
>
> **The Court**: We really shouldn't. Is this just your case?
>
> **Prosecutor**: No. It's not [Hereford]—I'm not going to go into it a whole lot. I just want to ask a quick question. I think maybe he'll get around to it. It doesn't have to be on the record. I might have a way to resolve this problem. When myself and the detective spoke to him outside, I went over his Fifth Amendment rights with him and he said he wanted to waive those and testify. Okay. Mr. Williams had told me after the trial that he was going to testify. In fact, we had a sense to get adjourned because—
>
> **The Court**: But, you know—see, he's mentally slow and—
>
> **Prosecutor**: Well, that's what I mean.
>
> **The Court**: I don't want to—

---

[1]Neither Hereford nor Mitchell consented to Woodside's "standing in" as Hereford's attorney. *See Carroll v. Renico*, 475 F.3d 708, 713 (6th Cir. 2007) (observing that trial courts ideally should elicit the defendant's informed consent to a "stand in" attorney).

> **Prosecutor**: All I want to indicate is that his mom said, "I don't think he understands what you were asking him." Would you have him talk to his mom?
>
> **The Court**: Yeah. Uh-huh.
>
> **Prosecutor**: Okay.
>
> **The Court**: That's good. We'll wait for him.
>
> **Prosecutor**: Okay. I mean—okay, that was it your Honor.

JA 53–54, 74–76, 138–39.[2]

After Mitchell returned, Smith spoke to his lawyer by phone and waived his Fifth Amendment privilege. Over Mitchell's objection, the court permitted the prosecutor to treat Smith as a hostile witness, but first let Mitchell voir dire him. In response to Mitchell's questions, Smith could not recall if he spoke to a law enforcement representative about the case since the previous December, although at the bench conference the prosecutor said that he and the lead detective just spoke to Smith in the hallway. Smith eventually testified, offering that Hereford held the gun during the robbery. *See Hereford*, 2003 WL 193523, at *2. The court convicted Hereford and sentenced him to between nine and twenty years in prison.

Hereford appealed his conviction but did not raise the Sixth Amendment challenge in his appellate brief. He was not at fault inasmuch as the transcript of the bench conference was neither noted in the trial court docket entries nor provided to appellate counsel along with the trial transcripts. Only after obtaining the trial video one day before filing the appeal did Hereford's attorney learn of it. Upon Hereford's motion, the Michigan Court of Appeals allowed him to file a supplemental brief raising the claim.

The Michigan Court of Appeals affirmed Hereford's conviction in an unpublished per curiam decision but neglected to address the ex parte bench conference. Based on this omission, Hereford petitioned the court to rehear his case. As to Hereford's argument that he was denied counsel during a critical stage of his trial, the Michigan Court of Appeals stated:

> We agree with defendant that it was improper to conduct a bench conference without defense counsel's presence. *See generally People v. Riggs*, 223 Mich. App. 662, 677, 568 N.W.2d 101 (1997) (Sixth Amendment right to counsel attaches at "critical stage" of proceedings); *People v. Gonzalez*, 197 Mich. App. 385, 402, 496 N.W.2d 312 (1992) (improper ex parte communications deny right to fair trial). However, we conclude that the error was harmless beyond a reasonable doubt. *See People v. Watson*, 245 Mich. App. 572, 585, 629 N.W.2d 411 (2001) (violation of right of confrontation may not be redressed unless error is harmless beyond a reasonable doubt). As we have previously stated, disregarding Smith's entire testimony, the balance of the trial testimony supports defendant's conviction for aiding and abetting an armed robbery. *Id*. Further, the court, sitting as the trier of fact, was well aware of the problems with Smith's testimony, and knew from the bench conference that Smith had, in fact, spoken with the detective.

*Hereford*, 2003 WL 193523, at *4.

---

[2]Although the original trial transcript omits a portion of the discussion, Hereford filled the gap with a complete—although slightly varied—transcript in a supplemental state-court appellate brief.

The Michigan Supreme Court, over Justice Kelly's dissent, denied Hereford leave to appeal. *People v. Hereford*, 670 N.W.2d 226 (Mich. 2003) (table). Hereford then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan challenging his conviction on two grounds. He argued that the ex parte conference violated his Sixth Amendment right to the presence of counsel at all critical stages of the proceedings, and he also alleged ineffective assistance of counsel. The district court referred Hereford's motion for summary judgment on the critical-stage claim to a magistrate judge. The magistrate—heavily relying on our decision in *United States v. Minsky*, 963 F.2d 870 (6th Cir. 1992)—recommended issuing a conditional writ after concluding that the trial court conducted a critical stage in Hereford's trial without defense counsel, and that, therefore, the state appellate court improperly reviewed the claim for harmless error. The district court adopted the magistrate's Report and Recommendation, granting summary judgment and conditionally granting the writ. *Hereford v. Warren*, 486 F. Supp. 2d 659 (E.D. Mich. 2007). Michigan appeals, and we now reverse the district court.

II.

We review de novo the district court's decision granting habeas relief. *Dyer v. Bowlen*, 465 F.3d 280, 283–84 (6th Cir. 2006). Because Hereford filed his habeas petition after 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs his appeal.

Under AEDPA, we must presume correct the state court's factual findings unless Hereford rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Moreover, AEDPA prohibits a federal court from granting a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1).

This case implicates § 2254(d)(1)'s "unreasonable application" clause. Under this clause, we cannot grant relief unless the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the [petitioner's] case," or "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Our task is not to determine whether the state court reached the correct outcome, but rather to determine whether the court's application of clearly established federal law is objectively unreasonable—"a substantially higher threshold." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939 (2007).

AEDPA also restricts the body of law a habeas court may consider. The Supreme Court in *Williams* explained that "clearly established Federal law" in § 2254(d) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). That body of precedent includes "not only bright-line rules but also the legal principles and standards flowing from precedent." *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002). Thus, "we may find the application of a *principle* of federal law unreasonable despite the involvement of a set of facts different from those of the case in which the principle was announced." *Spisak v. Hudson*, 512 F.3d 852, 854 (6th Cir. 2008) (internal quotation marks and brackets omitted); *see also Panetti v. Quarterman*, 127 S. Ct. 2842, 2858 (2007). We may look to lower courts of appeals' decisions, not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

III.

A.

The Supreme Court has "adopted the general rule that a constitutional error does not automatically require reversal of a conviction . . . and has recognized that most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). Automatic reversal is required only if the error was a "structural defect" that permeated "[t]he entire conduct of trial from beginning to end" or "affect[ed] the framework within which the trial proceeds." *Id.* at 309–10. If, on the other hand, the error was simply a "trial error," a court reviews for harmlessness. A trial error "occur[s] during the presentation of the case to the jury, and . . . may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08.

The Michigan Court of Appeals found that the ex parte conference was not an error requiring automatic reversal, but rather was subject to harmless-error analysis. Finding defense counsel's absence harmless beyond a reasonable doubt, the court affirmed Hereford's conviction.[3] The question for decision is whether the state court unreasonably declined to apply the rule of structural error to this lawyer-less stage in Hereford's criminal trial, or whether it reasonably held that Hereford must point to actual prejudice arising from his counsel's absence to obtain relief.

The Supreme Court has "found structural error only in a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997). These structural errors include: total deprivation of the right to counsel, *Gideon v. Wainwright*, 372 U.S. 335 (1963); lack of an impartial trial judge, *Turney v. Ohio*, 273 U.S. 510 (1927); unlawful exclusion of grand jurors of the defendant's race, *Vasquez v. Hillery*, 474 U.S. 254 (1986); denial of the right to self-representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168 (1984); denial of the right to a public trial, *Waller v. Georgia*, 467 U.S. 39 (1984); and denial of the right to a jury verdict of guilt beyond a reasonable doubt, *Sullivan v. Louisiana*, 508 U.S. 275 (1993). In *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984), the Supreme Court added to the list the denial of counsel at a "critical stage" of the criminal proceedings, entitling the defendant to a new trial without a specific showing of prejudice because the error makes "the adversary process itself presumptively unreliable." *See also Van v. Jones*, 475 F.3d 292, 311–12 (6th Cir.) (holding that a defendant is deprived of counsel at a critical stage, "a *per se* Sixth Amendment violation [results,] warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error"), *cert. denied*, 128 S. Ct. 708 (2007); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).

Hereford contends that the bench conference in the middle of his trial was a critical stage of the criminal proceedings. The Supreme Court, however, has never indicated that an improper ex parte conference between the judge and prosecutor during trial amounts to *Cronic* error. In *Van v. Jones*, faced with a similar dearth of on-point Supreme Court decisions, we found—as a matter of first impression—that a Michigan consolidation hearing is not a critical stage. 475 F.3d at 312.

---

[3]We agree with the Appellant that the district court misconstrued the state court's opinion. The district court characterized the state court's general citation to *People v. Riggs* as a factual finding that the bench conference was a critical stage. *Hereford*, 486 F. Supp. 2d at 667 ("[T]he Michigan Court of Appeals found [this to be a critical stage] in its opinion of rehearing, at p. 5."). Even ignoring AEDPA's deferential standard of review, *see Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), all that can be said of the state court's analysis is it simply reflects a longstanding assessment, explained most fully by the Michigan Supreme Court in *People v. France*, that ex parte remarks are nearly always improper, but only sometimes involve critical stages. 461 N.W.2d 621, 631–32 (Mich. 1990). *Compare People v. Arnold*, 720 N.W.2d 740 (Mich. 2006) (denial of counsel at sentencing, a critical stage, "is structural error requiring automatic reversal"), *with People v. Peoples*, No. 250680, 2004 WL 2877313, at *2 (Mich. Ct. App. Dec. 14, 2004) ("Because the brief [ex parte] communication [between judge and juror] was administrative in nature . . . we conclude that it did not involve a critical stage of the trial and that a harmless error analysis is appropriate.").

With no analogous precedent, we surveyed critical-stage jurisprudence, recognizing that the "case law available suggests that the pithy definitions we have do not simply capture the sometimes permissive or inclusive conclusions by the Supreme Court and our court that this or that period, moment, or event in the course of a criminal proceeding is a critical stage." *Id.* We identified a list of the Supreme Court's various labels to include steps: (1) that hold "significant consequences for the accused," *Bell v. Cone*, 535 U.S. 685, 695–96 (2002); (2) where "[a]vailable defenses may be irretrievably lost, if not then and there asserted," *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961); (3) where "rights are preserved or lost," *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam); (4) when counsel's presence is "necessary to mount a meaningful defence," *United States v. Wade*, 388 U.S. 218, 225 (1967); and (5) where "potential substantial prejudice to defendant's rights inheres in the . . . confrontation and [where] counsel [can] help avoid that prejudice," *Coleman v. Alabama*, 399 U.S. 1, 9 (1970) (internal quotation marks omitted). Drawing upon that precedent, we formulated a working definition of a critical stage. We found the common thread in these decisions to be the likelihood "that significant consequences might have resulted from the absence of counsel at the stage of the criminal proceedings." *Van*, 475 F.3d at 312–13.

On appeal, Hereford suggests that because the judge discussed Smith's state of mind with the prosecutor without giving defense counsel an opportunity to respond, the uncertainty of prejudice alone makes his conviction unreliable. Michigan responds that although the communication was improper, it held no significant consequences for Hereford's case because no rights could be asserted or lost. Our review of the trial transcript reveals a *de minimis* communication that was administrative in nature, in which the prosecutor informed the court that, although Smith indicated he wanted to testify, Smith's mother did not think he understood the court's questions, and Smith might benefit from speaking with his mother. Because of the conference's limited purpose (to request time for the witness to speak with his mother) and duration (seconds, not minutes), we find that the state court could reasonably conclude that "significant consequences," *id.* at 312, would not likely turn on counsel's absence from this sort of brief, administrative discussion. In other words, the state court could reasonably conclude that a brief, administrative conference is not of a character to hold "significant consequences for the accused," *Bell*, 535 U.S. at 695–96; where "[a]vailable defenses may be irretrievably lost, if not then and there asserted," *Hamilton*, 368 U.S. at 54; or where "rights are preserved or lost," *White*, 373 U.S. at 60. Although courts disfavor ex parte contact between judges and prosecutors, *see Carroll v. Princess Anne*, 393 U.S. 175, 183 (1968); *United States v. Carmichael*, 232 F.3d 510, 517 (6th Cir. 2000), given the impertinence of this type of brief, administrative bench conference, it fails to qualify as *Cronic* error.[4]

---

[4]We agree with the dissent that critical stages must be assessed categorically, but we disagree with the implication that it is necessary to aggregate all ex parte communications into one category. Unsurprisingly, members of this court have refused to label ex parte communications critical stages in all cases. *Compare United States v. Carmichael*, 232 F.3d 510, 517 (6th Cir. 2000) (ex parte discussions between prosecutor and judge concerning the contents of Title III wiretap transcripts not a critical stage), *with id.* at 523 (Keith, J., dissenting), *and United States v. Minsky*, 963 F.2d 870 (6th Cir. 1992) (implying that ex parte discussion between judge and prosecutor as part of in camera review of FBI investigation forms is a critical stage).

Nor is this approach limited to ex parte communications. *Compare French v. Jones*, 332 F.3d 430 (6th Cir. 2003) (giving a new, nonstandard supplemental instruction constituted a critical stage of the proceedings), *with Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2003) (rereading instructions given during the original charge did not constitute a critical stage of the proceedings). The dissent's own example—sleeping lawyer cases—and its selective reliance on *Burdine v. Johnson*, 262 F.3d 336 (5th Cir. 2001) (en banc), proves the point. The en banc Fifth Circuit specifically "decline[d] to adopt a per se rule that any dozing by defense counsel during trial merits a presumption of prejudice." *Id.* at 349. Its holding, "that the repeated unconsciousness of [the defendant's] counsel through not insubstantial portions of the critical guilt-innocence phase of [the defendant's] capital murder trial warrants a presumption of prejudice, is limited to the egregious facts found by the state habeas court in this case." *Id.* *Burdine* focused on defense counsel's repeated unconsciousness—as many as ten naps—through a substantial portion of a twelve-hour-and-fifty-one-minute trial. *Id.* at 338.

The Supreme Court's holding in *Rushen v. Spain*, 464 U.S. 114 (1983) (per curiam), supports our conclusion that the state court's decision was reasonable. In *Rushen*, the Court determined that an unrecorded ex parte communication between the trial judge and a juror was subject to harmless-error analysis. There, the trial court directed prospective jurors during voir dire to reveal any past association with violent crimes. *Id.* at 115. A juror who testified to no personal connection to violent crimes during voir dire later recalled the murder of a childhood friend. *Id.* at 116. That juror twice went to the trial judge's chambers to explain, fearing that she might become emotional if the crime's details were explored further at trial. *Id.* The judge confirmed that it would not affect the juror's disposition at trial, told her not to worry, made no record of the conversations, and did not inform the defendants or their lawyers. *Id.* Defense counsel nevertheless learned about the communications after the jury returned a guilty verdict, and moved for a new trial. *Id.* The trial judge denied the motion, concluding that the communications "lacked any significance" and that the defendant suffered no prejudice from them. *Id.* On direct appeal, the state court found the ex parte communications harmless beyond a reasonable doubt. *Id.* at 117. On habeas review, the Ninth Circuit issued the writ "on the basis that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error." *Id.* The Supreme Court, however, "emphatically disagree[d]," explaining that "[t]here is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial." *Id.* at 117–18. In the Court's opinion, the Ninth Circuit's contrary conclusion "ignore[d] the[] day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice." *Id.* at 119.

Hereford points to decisions of lower federal courts that condemn prosecutors' ex parte discussions with judges, but a review of those decisions (often involving communications far more egregious than in this case) only bolsters our view that the state court reasonably refused to deem this type of discussion structural error, and that cases where such a label is appropriate will be rare. *See Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996) (no structural error where prosecutor's ex parte discussion with state Supreme Court Chief Justice resulted in the Chief Justice advising the trial court to admit evidence it would have otherwise excluded); *United States v. Earley*, 746 F.2d 412, 416–18 (8th Cir. 1984) (same for ex parte trial brief); *United States v. Walsh*, 700 F.2d 846, 858 (2d Cir. 1983) (same for ex parte proffer of evidence); *United States v. DeLeo*, 422 F.2d 487, 499 (1st Cir. 1970) (same for ex parte discussion about prosecutor's illness).

Hereford's reliance on our pre-AEDPA decision in *United States v. Minsky*, 963 F.2d 870 (6th Cir. 1992)—on which the district court relied to grant relief—likewise fails to aid his case. In *Minsky*, the defendant moved under *Brady v. Maryland*, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. § 3500, for production of prior statements by prosecution witnesses contained within Federal Bureau of Investigation routine investigation forms ("FBI 302s"). 963 F.2d at 872. In response to the government's objection, the court held an ex parte bench conference with the prosecutor as part of its in camera review of the FBI 302s. *Id.* at 872–73. Citing footnote 25 from *Cronic*, we reversed the defendant's conviction, reasoning that the conference affected the defendant's ability to review material and cross-examine a key witness. *Id.* at 874. We explained that:

> Although there are circumstances where an *ex parte* communication might be overlooked, the burden of proving lack of prejudice is on the government, and it is a heavy one. The *ex parte* conference in the instant case occurred at a time when the defense was arguing that the FBI 302s were subject to disclosure under the Jencks Act and *Brady*. The release of this material would have allowed the defense to undermine the credibility of Brown, a key government witness. The government has proffered no explanation why the defense was denied an opportunity to participate in a conference at such a critical stage of the proceedings. We refuse to condone conduct that undermines confidence in the impartiality of the court.

*Id.* (internal citations, brackets, and quotation marks omitted).

The district court viewed *Minsky*'s statement that ex parte approaches "can only be justified and allowed by compelling state interests," *id.* (quoting *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977)), as "correctly stat[ing] the law to be applied in the present case," *Hereford*, 486 F. Supp. 2d at 666 n.5. Under this standard, the district court concluded that because the government "cannot come close to meeting its heavy burden of showing a compelling state interest that would justify excluding Petitioner's counsel from the bench conference," the Michigan Court of Appeals' decision was objectively unreasonable. *Id.* at 667. That conclusion, however, misapprehends controlling law for AEDPA purposes; the language found in *Minsky* is not a Supreme Court holding that reflects clearly established federal law. *See Williams*, 529 U.S. at 381. The compelling-state-interest test is the elaboration we give to ex parte contacts on direct appeal, but the state court is not bound by what we do.

The district court accordingly failed to abide by AEDPA's deferential review standard, and our review confirms that the Michigan Court of Appeals—whether right or wrong—was not unreasonable in deciding that any error resulting from defense counsel's absence was not structural. Despite the dissent's admirable effort, "the question is not the reasonableness of the federal court's interpretation of *Cronic*, but rather whether the [state] court's narrower reading of that opinion was 'objectively unreasonable.'" *Wright v. Van Patten*, 128 S. Ct. 743, 748 (2008) (Stevens, J., concurring in judgment) (quoting *Williams*, 529 U.S. at 409).

B.

Having reasonably concluded that the ex parte discussion did not amount to structural error, the Michigan Court of Appeals deemed it trial error. In *Fulminante*, the Supreme Court stated that "trial error," which "occur[s] during presentation of the case to the jury," may "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." 499 U.S. at 308–09. Here, the state court applied *Chapman v. California*'s harmless-error standard, which holds that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[5] 386 U.S. 18, 24 (1967).

In *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007), the Supreme Court held that regardless of whether a state court applied *Chapman* on direct review, a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the . . . standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)]." Under *Brecht*'s more state-friendly standard, we ask whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). If, however, "the matter is so evenly balanced" that the habeas court has "grave doubt" as to the harmlessness of the error, it "should treat the error, not as if it were harmless, but as if it affected the verdict." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

Hereford points to a straightforward potential for prejudice: if defense counsel knew Smith spoke with the prosecutor and lead detective during the recess, counsel could impeach Smith's statement that he did not remember the last time he spoke with law enforcement about the case. This lost opportunity is vital, Hereford says, because Smith was the only witness to link Hereford to the gun.

---

[5]Michigan apparently concedes that the ex parte communication established constitutional error. *See Rushen*, 464 U.S. at 118 n.2.

We conclude, however, that the error did not have a "substantial and injurious effect" on the verdict. The trial court acted as factfinder, and thus when defense counsel asked Smith about the last time he spoke with law enforcement and Smith provided confused responses, the court could evaluate the import of any inconsistencies between that testimony and the information disclosed at the sidebar. Coupled with the court's recognition that Smith was "mentally slow," any further cross-examination on this point would not have altered the court's assessment of Smith's credibility. As the Michigan Court of Appeals explained, "[T]he court, sitting as the trier of fact, was well aware of the problems with Smith's testimony, and knew from the bench conference that Smith had, in fact, spoken with the detective." *Hereford*, 2003 WL 193523, at *4.

Even ignoring Smith's entire testimony, the evidence supported Hereford's conviction under an aider-and-abetter theory. *See id.* at *2 ("[E]ven disregarding Smith's testimony that defendant had a weapon, the substantial identification testimony . . . amply supported defendant's conviction as an aider and abettor of the armed robbery."). In Michigan, every person connected with the commission of a crime—whether directly or as an aider and abettor—"shall be punished as if he had directly committed such offense." Mich. Comp. Laws § 767.39; *see also People v. Stewart*, 2008 WL 108959, at *2–3 (Mich. Ct. App. 2008) (applying the aider-and-abettor theory to armed robbery). Evidence establishing Hereford's participation in the robbery rendered Smith's testimony that Hereford specifically held the gun superfluous. In these circumstances, the ex parte communication did not have a "substantial and injurious effect or influence in determining the . . . verdict." *Brecht*, 507 U.S. at 637–38.

IV.

Because the state court reasonably ruled that the ex parte communication in this case did not involve a critical stage and that any error arising from defense counsel's absence was harmless, we reverse the district court's judgment and remand the case for further proceedings.

———————

**DISSENT**

———————

CLAY, Circuit Judge, dissenting.  During Darren Hereford's trial, the prosecution called as a witness one of Hereford's co-defendants, who is mentally deficient.  After this witness asked to consult his attorney, the trial judge called a brief recess, and Hereford's attorney left the courtroom to attend to another proceeding.  While defense counsel was absent, the trial judge conducted an *ex parte* bench conference with the prosecution, where the prosecutor revealed the details of a conversation he had just had with the witness, the witness' mother, and a police detective.  The majority wrongly describes this *ex parte* bench conference a "brief, administrative conference" which was unlikely to hold "significant consequences for the accused." Majority Op. at 6.  Because I do not believe that an *ex parte* conversation regarding the status and competency of a key prosecution witness can be deemed inconsequential, I dissent.

I.

When a criminal defendant is denied counsel during a part of his trial, the question of whether that defendant is entitled to a new trial often hinges upon whether counsel was absent during a "critical stage" of the proceedings.  *See United States v. Cronic*, 466 U.S. 648, 659 (1984).  Although *Strickland v. Washington*, 466 U.S. 668 (1984) generally requires a defendant alleging ineffective assistance to show that counsel's unprofessional errors prejudiced the outcome of the trial, *see id.* at 694, when a criminal defendant is denied counsel at a critical stage, this alone entitles him to a new trial—no showing of prejudice is required.  *Cronic*, 466 U.S. at 659.[1]

The majority claims that the *ex parte* bench conference does not constitute a critical stage of Hereford's trial because it was merely "administrative in nature."  Majority Op. at 6.  Yet while the majority is correct that there may be some *ex parte* discussions, such as a brief conference to discuss scheduling or to request a bathroom break, which "might be so *de minimis* that there would be no constitutional significance," *see Green v. Arn*, 809 F.2d 1257, 1261 (6th Cir. 1987), the *ex parte* proceeding at Hereford's trial was nothing of the sort.  Hereford's counsel was absent during a bench conference regarding the status and competency of a key prosecution witness, and such a conference regarding a key witness is categorically a critical stage.[2]

As we noted in *Van v. Jones*, 475 F.3d 292 (6th Cir. 2007), the Supreme Court has not provided a "comprehensive and final one-line definition of 'critical stage.'" *Id.* at 312.  Instead, the

———————

[1]After erroneously concluding that Hereford was not denied counsel during a critical stage of his trial, the majority unnecessarily confuses the issues in this case by focusing on the distinction between structural error and trial error.  According to the majority, the district court reasonably concluded that, because the *ex parte* bench conference only constituted trial error, harmless error analysis applies.  Majority Op. at 8.  Harmless error analysis, however, does not apply to the instant case.  Because Hereford alleges that he was denied effective assistance of counsel, if the Court concludes that Hereford is not entitled to a presumption of prejudice, we must apply *Strickland*'s two step inquiry; *Strickland* analysis, not harmless error analysis, governs all ineffective assistance claims not governed by *Cronic*.  *See Van v. Jones*, 475 F.3d 292, 308 ("*Cronic* was meant to cover those cases in which prejudice was to be assumed. *Strickland* would address cases in which prejudice needed to be shown.")

[2]In footnote 4 of its opinion, the majority mischaracterizes this dissent as asserting that "it is necessary to aggregate all *ex parte* communications into one category," Majority Op. at 6 n.4, but the dissent makes no such claim. Had Hereford's counsel been absent during (or, as the majority suggests, slept through) a truly inconsequential portion of Hereford's trial, *Cronic* would not be implicated.  *See* 466 U.S. at 659.  In the instant case, however, defense counsel was not absent during an inconsequential phase of the trial; he was absent while the prosecutor and the judge were discussing the competency of a key witness.

Supreme Court has provided five, at times overlapping, descriptions of what type of proceeding constitutes a "critical stage" of a trial. According to these five descriptions, a critical stage is a proceeding: 1) where "[a]vailable defenses may be irretrievably lost, if not then and there asserted," *Hamilton*, 368 U.S. at 53; 2) "where rights are preserved or lost," *White*, 373 U.S. at 60; 3) where counsel is "necessary to mount a meaningful defense," *United States v. Wade*, 388 U.S. 218, 225 (1926); 4) where "potential substantial prejudice to defendant's rights" is inherent in a particular proceeding and the presence of counsel will "help avoid that prejudice," *Coleman v. Alabama*, 399 U.S. 1, 9 (1970); or 5) which holds "significant consequences for the accused," *Bell*, 535 U.S. at 696. *See Van*, 475 F.3d at 312 (listing same). In light of this web of Supreme Court precedent defining the phrase "critical stage," *Van* attempted to summarize the Court's jurisprudence under one test: "[i]n order to assess if a given portion of a criminal proceeding is a critical stage, we must ask how likely it is that significant consequences might have resulted from the absence of counsel at the stage of the criminal proceeding." *Id.* at 313. So long as there is a "reasonable likelihood" that prejudice will arise in a particular type of proceeding, that proceeding should be considered a critical stage. *Id.*

A bench conference concerning the status or competency of a key prosecution witness, such as the one in Hereford's case, is a proceeding that is likely to hold significant consequences for the accused. Such a bench conference not only provides parties with the opportunity to seek important evidentiary or other rulings from the trial judge, but they also may present counsel with a key opportunity to offer objections and thereby preserve issues for appellate review. *See, e.g.*, *United States v. Newsom*, 452 F.3d 593, 601 (6th Cir. 2006). If such objections are not lodged during the bench conference itself, they may be deemed untimely and thus be "irretrievably lost." *Hamilton*, 368 U.S. at 53. Moreover, even if an attorney who is absent during a bench conference is permitted to lodge a later objection relating to a matter discussed at that conference, he may not even be aware of the need to object, as he was absent during the time when information justifying an objection was discussed or revealed. The potential significance of a bench conference is all the greater when, as was the case during the *ex parte* proceeding as issue in this appeal, the conference concerns the testimony of a key prosecution witness. Witness testimony, especially the testimony of a prosecution witness, is not always easy for a defense attorney to anticipate. Information revealed during a bench conference discussing that witness may allow defense counsel to draw out crucial testimony at cross-examination which otherwise might have been left unmentioned. Because a defendant cannot predict in advance whether a bench conference will reveal such key information, the presence of counsel is the check our adversarial system provides against uncertain proceedings. Only when a defendant is certain that his attorney will be present at the moment a crucial event occurs during his trial can the defendant be prepared to "mount a meaningful defense" against the prosecution's developing case. *Wade*, 388 U.S. at 225.

In holding that the *ex parte* bench conference at issue in this case did not constitute a critical stage, the majority claims that the conference was only a "brief, administrative conference" in which no important matters were discussed. Majority Op. at 6. This conclusion by the majority, however, wrongly assumes that, even if the important matters discussed in the absence of defense counsel were few in number, the proceedings would have been identical in the presence of defense counsel.[3] Hereford's counsel may have raised a crucial objection had he been present at the bench conference; or he may have asked a significant question which would have revealed information beneficial to Hereford's case. Perhaps, in light of the prosecution's indication that the witness did not understand the judge's questions, counsel would have pursued a different line of questioning on cross-examination that would have seriously undermined the witness' credibility; or perhaps an adversarial

---

[3]Moreover, the majority is wrong to suggest that only minor issues were discussed at the bench conference. Indeed, the matters discussed at the conference went to the competency of a key prosecution witness, and whether the witness fully understood the proceedings.

discussion during the bench hearing would have caused the prosecutor to make a damaging admission. Of course, because defense counsel was not present during the bench conference, it is impossible for us to know just what may have transpired had counsel been permitted to attend—and this uncertainty is exactly why *Cronic* requires us to presume prejudice. 466 U.S. at 659.

Moreover, contrary to the majority's claim that an *ex parte* bench conference is somehow less likely to prejudice the outcome of a trial when, as was the case at Hereford's trial, the judge sits as the finder of fact, *see* Majority Op. at 9, the opposite is frequently likely to be true. When a jury weighs the evidence against an accused, bench conferences serve the essential purpose of allowing potentially prejudicial matters to be discussed by the court and counsel without revealing their content to the ultimate finder of fact. *See United States v. Block*, 755 F.2d 770, 776 (11th Cir. 1985). When, however, the judge also sits as fact-finder, an *ex parte* conference allows the attorney fortunate enough to participate an opportunity to shade information presented to the finder of fact, and denies opposing counsel the opportunity to correct the judge's misimpressions. Such a one-sided presentation of the issues is likely to color how the fact-finder views the case, and thereby adds to the probability that such a proceeding is prejudicial to the absent party.

Because it is reasonably likely that a bench conference discussing a key prosecution witness will yield valuable information, provide the defense with a crucial opportunity to raise new arguments or objections, or allow the parties participating in the discussion to color the judge's view of the case, such a discussion obviously constitutes a critical stage of the proceedings. A proceeding which is likely to present such a critical opportunity to the parties necessarily presents a likelihood of "significant consequences" to the defendant, *Bell*, 535 U.S. at 696; and it only through the presence of counsel that a party can be sure that "potential substantial prejudice" is avoided by properly raised objections and a well-informed defense. *Coleman*, 399 U.S. at 9; *see Powell v. Alabama*, 287 U.S. 45, 68–69 (1932) ("Left without the aid of counsel [a criminal defendant] may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.") Accordingly, under any of the descriptions the Supreme Court has provided for what constitutes a critical stage of a criminal trial, a mid-trial bench conference concerning a key prosecution witness qualifies as such stage. *See Van*, 475 F.3d at 312.

Rather than offer reasons why a mid-trial discussion of a key prosecution witness does not constitute a critical stage of a criminal trial, the majority relies on the Supreme Court's decision in *Rushen v. Spain*, 464 U.S. 114 (1983) (per curiam) to support its conclusion that an *ex parte* communication can constitute harmless error. *Rushen*'s facts, however, are hardly analogous to those presented by the instant case. In *Rushen*, a juror twice approached the trial judge outside of the presence of either party's counsel, and informed the judge that she was emotionally distraught because she had known the victim of a murder which was briefly mentioned during the trial. *Id.* at 116. The judge asked the juror whether her emotional state would affect her disposition of the case, and received assurances that it would not. *Id.* In affirming the *Rushen* defendant's conviction, the Supreme Court merely held that an *ex parte* communication between a judge and a juror may be harmless error if a post-trial hearing determines that no prejudice resulted from the communication. *Id.* at 119–20.

The key distinction between *Rushen* and the instant case, however, is that *Rushen* did not involve an injury to the adversarial process. The right to counsel attaches to those proceedings "at which the accused 'require[s] aid in coping with legal problems or *assistance in meeting his adversary*.'" *Patterson v. Illinois*, 487 U.S. 285, 289 (1988) (quoting *United States v. Ash*, 413 U.S. 300, 313-320 (1973)) (emphasis added). The judge in *Rushen* engaged in an *ex parte*

communication outside the presence of both prosecution and defense counsel; he did not give a comparative advantage to either party.[4]

When, on the other hand, a judge holds a bench conference with only one party's counsel in attendance, the judge is potentially permitting that party to hear secrets which could be wielded to the disadvantage of the other party, or is allowing that party to raise issues before the court without giving the other side an opportunity to argue in opposition. Such an exclusive audience with the judge is exactly the sort of lopsided proceeding the Sixth Amendment is intended to prevent. *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). Accordingly, *Rushen*'s holding, that an *ex parte* proceeding—conducted away from either party—may constitute harmless error under the facts of that particular case, has no bearing on the instant case. When a judge holds a prosecution-only bench conference to discuss a key prosecution witness, the court leaves the defendant without representation at a critical stage of the trial, and accordingly violates the Sixth Amendment. *See Cronic*, 466 U.S. at 659.

## II.

Although the majority purports to apply *Cronic* in deciding the instant case, its analysis more closely resembles the *Strickland* prejudice test than the presumption of prejudice set out by *Cronic*. In presuming prejudice when a criminal defendant is denied counsel at a critical stage of trial, cases governed by *Cronic* engage in a fundamentally different inquiry than those governed by *Strickland*. *Strickland*'s prejudice inquiry is necessarily a fact-based inquiry; in order to determine whether defense counsel's unprofessional errors may have affected the result of a case, a court must necessarily ask what errors occurred and how exactly did they impact the trial. 466 U.S. at 694. *Cronic*'s critical stage analysis, however, focuses on the character of a particular type of proceeding. Rather than examining the particular events of a particular defendant's trial, *Cronic* looks to the nature of a particular phase of a criminal trial *generally*, and asks whether denying counsel to criminal defendants in that stage of a trial may cause "significant consequences" for many of those defendants. *Van*, 475 F.3d at 312–13. This is a categorical inquiry, requiring a conviction to be reversed if counsel was absent during a proceeding which, by its nature, was likely to prejudice the defendant—even if a careful review of the trial transcript reveals that no such prejudice could actually have occurred. *See Van*, 475 F.3d at 313; *id* at 314 ("[T]he overarching legal question of whether a particular proceeding is a 'critical stage' of the trial should focus not only on the specific case before us, but the general question of whether such a stage is 'critical.'")[5]

---

[4]Indeed, as the Supreme Court explained in *Gideon v. Wainwright*, 372 U.S. 335 (1963), a principal function of the Sixth Amendment right to counsel is to place a criminally accused on a level playing field with the prosecution:

> Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the wide-spread belief that lawyers in criminal courts are necessities, not luxuries.

*Id.* at 344.

[5]The categorical approach to determining which parts of a trial constitute a critical stage was established by a footnote in the *Cronic* opinion, which lists several prior decisions that involved denial of counsel "during a critical stage of the proceeding." 466 U.S. at 659 n.25. In each of the decisions where a portion of a trial was deemed to be a critical stage, the question in determining whether that portion of the trial is "critical" did not hinge upon the particular facts of a particular defendant's case. Rather, each case declared a particular kind of proceeding to be a critical stage, regardless of what actually transpired at trial. *See Herring v. New York*, 422 U.S. 853, 864–65 (1975) (holding that final arguments constitutes a critical stage of a trial); *White v. Maryland*, 373 U.S. 59, 60 (1963) (holding that any proceeding

The wisdom of such a categorical approach is made clear by the Fifth Circuit's *en banc* decision in *Burdine v. Johnson*, 262 F.3d 336, 348 (5th Cir. 2001) (*en banc*), the infamous "sleeping lawyer" case. In *Burdine*, a divided panel of the Fifth Circuit held that a capital defendant whose attorney slept through significant portions of his trial was not entitled to *Cronic*'s presumption of prejudice because "*under the specific circumstances of this case . . .* prejudice *cannot* be presumed." *Burdine v. Johnson*, 231 F.3d 950, 964 (5th Cir. 2000) (panel opinion) (emphasis in original). The panel opinion reasoned that:

> [I]t is possible that unobjectionable evidence (or evidence which [defense counsel] was already anticipating) may have been introduced while [counsel] slept, without having any substantial effect on the reliability or fairness of Burdine's trial. But, Burdine essentially asks us to assume that [his attorney] slept during the portions of the proceedings for which the transcript reflects no activity by him. In the light of the foregoing discussion and the rather vague testimony of the witnesses at the state habeas evidentiary hearing regarding when [counsel] slept, it would be inappropriate for us to engage in such speculation. In sum, *on this record*, we cannot determine whether [counsel] slept during a "critical stage" of Burdine's trial.

*Id.* at 964 (emphasis added). In other words, because Burdine did not prove that his attorney slept through prejudicial portions of the trial, he was not entitled to a presumption of prejudice.

The *en banc* court reversed the panel, holding that "[t]o justify a particular stage as 'critical,' the Court has not required the defendant to explain how having counsel would have altered the outcome of his specific case. Rather, the Court has looked to whether 'the substantial rights of a defendant *may* be affected' during that *type* of proceeding." *Burdine*, 262 F.3d at 347 (quoting *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991)) (emphasis added). According to the *en banc* court, the question of whether counsel's effective absence actually prejudiced the defendant was not a factor in determining whether counsel was absent during a critical stage of the trial. "Such a standard would require that the defendant, in effect, prove prejudice in order to receive a presumption of prejudice. That was not the standard announced in *Cronic*." *Id.* at 348.

In footnote 4 of its opinion, the majority claims to agree that "critical stages must be assessed categorically." Majority Op. at 6 n.4. Yet its analysis hews too close to the kind of fact-based inquiry forbidden by *Cronic*. The majority conducts a review of the "trial transcript," and decides that the actual events of the *ex parte* proceeding "reveals a *de minimus* communication that was administrative in nature." *Id.* at 12. This kind of fact-based inquiry, which looks at an individual trial transcript rather than the nature of a particular proceeding generally, is exactly the kind of inquiry prohibited by *Cronic*.

Indeed, despite its claim to be following the categorical approach in determining whether defense counsel's absence took place during a critical stage, the majority does not conduct a categorical inquiry at all. Under the majority's analysis, we determine whether a particular phase of a trial was a "critical stage" by reading the trial transcript to see whether the particular events of a specific trial prejudiced the defendant. *See* Majority Op. at 6. Only after we determine that the defendant was prejudiced by the absence of counsel during that phase of the trial do we apply a presumption that the defendant was prejudiced. Such Kafkaesque logic would defeat the purpose of *Cronic*. If an *ex parte* proceeding constitutes a critical stage only when a fact-based inquiry reveals that the proceeding actually prejudiced the defendant, then *Cronic*'s presumption of

---

where a criminal defendant "enter[s] a plea before the magistrate and that plea was taken at a time when he had no counsel," is presumed to have prejudiced that defendant); *Hamilton v. Alabama*, 368 U.S. 52 , 54 (1961) (holding that an arraignment constitutes a critical stage of trial); *Ferguson v. Georgia*, 365 U.S. 570, 596 (1961) (holding that direct examination of the accused is always a critical stage of trial).

prejudice becomes useless. *See Burdine*, 262 F.3d at 348 ("Such a standard would require that the defendant, in effect, prove prejudice in order to receive a presumption of prejudice. That was not the standard announced in *Cronic*.") Instead of paying lip-service to the correct, categorical approach, while simultaneously engaging in the kind of fact-based inquiry prohibited by *Cronic*, the majority should have actually followed the categorical approach, and asked whether conferences regarding the competency of a key prosecution witness are reasonably likely to hold significant consequences for the accused. *See Van*, 475 F.3d at 312.

III.

Moreover, the majority also errs in holding that the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), requires deference to the state court's decision upholding Hereford's conviction. Under AEDPA, a federal habeas court may only abrogate a state defendant's unconstitutional conviction in limited circumstances. Normally, we may only grant habeas relief to a petitioner convicted in state court if the state court's decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (formatting altered). A state decision is "contrary to" Supreme Court precedent when it "applies a rule that contradicts the governing law set forth" in the Supreme Court's cases; or when it "confronts a set of facts that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrives at a result different" from the Court's precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state decision involves an "unreasonable application of" Supreme Court precedent when it "identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case;" or when it "unreasonably extends a legal principle . . . to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

AEDPA's requirement that we defer to a state court's decision, however, does not require us to defer to something that has not actually been decided. Thus, in *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court explained that when the state decision under review in a habeas case only reached the first prong of the *Strickland* analysis, a federal habeas court applies *de novo* review with respect to any portions of the *Strickland* test which were not actually decided in the state court's opinion. *See id.* at 534 ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.")

In analyzing the instant case under AEDPA, we must consider the Michigan Court of Appeals decision which upheld Hereford's conviction, only two paragraphs of which considered the issue of whether Hereford is entitled to a new trial because the trial judge conducted an improper *ex parte* bench conference:

> Finally, defendant claims in his supplemental brief on appeal that his right to cross-examine a witness was diminished because the trial court held a bench conference without defense counsel being present. Defendant asserts that if his counsel was present he would have gained valuable information that would have allowed him to impeach witness and codefendant Smith's credibility.

> We agree with defendant that it was improper to conduct a bench conference without defense counsel's presence. *See generally People v. Riggs*, 223 Mich.App. 662, 677, 568 N.W.2d 101 (1997) (Sixth Amendment right to counsel attaches at "critical stage" of proceedings); *People v. Gonzalez*, 197 Mich.App. 385, 402, 496 N.W.2d 312 (1992) (improper ex parte communications deny right to fair trial). However, we

conclude that the error was harmless beyond a reasonable doubt. *See People v. Watson*, 245 Mich.App. 572, 585, 629 N.W.2d 411 (2001) (violation of right of confrontation may not be redressed unless error is harmless beyond a reasonable doubt). As we have previously stated, disregarding Smith's entire testimony, the balance of the trial testimony supports defendant's conviction for aiding and abetting an armed robbery. *Id.* Further, the court, sitting as the trier of fact, was well aware of the problems with Smith's testimony, and knew from the bench conference that Smith had, in fact, spoken with the detective.

*People v. Hereford*, No. 227296, 2003 WL 193523, at * 3–4 (Mich. Ct. App. January 28, 2003).

Contrary to the majority's claim that the Michigan Court of Appeals engaged in an objectively reasonable, if "narrower," reading of *Cronic* than this Court's precedents may require, the Michigan court does not appear to have considered *Cronic* at all. Nowhere in the Michigan court's opinion does the court decide whether or not Hereford was denied counsel at a critical stage of his trial. Instead, the court appears to leap headfirst into a discussion of whether the trial court's error was "harmless beyond a reasonable doubt," without even considering if such harmless error analysis is even permissible under *Cronic*. *Hereford*, 2003 WL 193523, at *4. Because the state court decision under review did not even consider, must less decide, the issue of whether Hereford was denied counsel in a critical stage of his trial, we have no state court decision to defer to on this point, and "our review is not circumscribed" by a decision that does not actually exist. *Wiggins*, 539 U.S. at 534.

Moreover, inasmuch the *ex parte* bench conference at issue in this case constituted a critical stage of Hereford's trial, the Michigan court's holding that depriving Hereford of counsel at this stage of the trial could somehow be harmless error is contrary to the Supreme Court's decision in *Cronic*. Under *Cronic*, "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." 466 U.S. at 659. Harmless error analysis is never appropriate when a criminal defendant is denied counsel during a critical stage of his trial, because prejudice is always presumed in such circumstances. *See id.* at 658 ("There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."); *see also Benitez v. United States*, 521 F.3d 625, 630 (6th Cir. 2008) ("A violation of a defendant's right to counsel at a critical stage is a structural error, and is therefore not subject to an analysis of whether the error was harmless or prejudicial." (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)). Accordingly, AEDPA does not require us to defer to the Michigan court's decision, as we are not bound by a decision that is contrary to clearly established Supreme Court precedent. § 2254(d)(1).

## CONCLUSION

When a prosecutor and a judge meet during trial to discuss a key prosecution witness, such a discussion constitutes a critical stage of the trial. The possibility that such a discussion will either reveal important information, or provide defense counsel with an opportunity to raise a key objection, is simply too great to allow the defendant to go unrepresented. Moreover, as AEDPA does not require us to defer to the state court's decision in this case, I must respectfully dissent from the majority's decision to deny habeas relief to Hereford.