PEOPLE v GONZALEZ

Docket Nos. 131337, 131338. Submitted July 7, 1992, at Grand Rapids.
Decided December 8, 1992, at 9:35 A.M. Leave to appeal sought.

Angel L. Gonzalez was convicted following a jury trial in the
Kent Circuit Court, George S. Buth, J., of two counts of armed
robbery and one count of possession of a firearm during the
commission of a felony. The jury was unable to reach a verdict
regarding an additional charge of felony murder and a felony-
firearm charge related to it. Rather than submit to a retrial of
the felony-murder charge, the defendant pleaded guilty of
second-degree murder. He was sentenced to life imprisonment
for the second-degree murder conviction, twenty-three to forty
years in prison for each of the armed robbery convictions, and
two years, to be served consecutively, for the felony-firearm
conviction. He appealed (Docket No. 131337).

In a separate trial regarding a separate robbery that occurred on
a different date, the defendant pleaded nolo contendere to
charges of assault with intent to commit murder and felony-
firearm. The court, George S. Buth, J., sentenced him to thir-
teen to twenty-five years in prison for the assault conviction
and two years, to be served consecutively, for the felony-firearm
conviction. The sentences in both cases were to run concur-
rently. The defendant appealed (Docket No. 131338). The ap-
peals were consolidated.

The Court of Appeals *held:*

1. Principles of double jeopardy would not have prohibited
the prosecution in the first case from retrying the defendant for
felony murder following his conviction of the predicate felony
of armed robbery. The unique circumstances involved in this
case constitute an exception to the general prohibition against
multiple prosecutions for the same offense under the federal or
the state constitution. The federal Double Jeopardy Clause
prohibits the prosecution from intentionally splitting a trial
into one for the predicate felony and another for the substan-

REFERENCES

Am Jur 2d, Criminal Law §§ 264, 606.
See the ALR Index under Criminal Law; Double Jeopardy; Sentence
and Punishment.

tive felony-murder charge. This case represents an exception to the general prohibition against successive prosecutions for related offenses because manifest necessity, rather than prosecutorial overreaching, compelled termination of an otherwise properly pursued criminal prosecution. A jury's inability to agree upon a verdict constitutes manifest necessity for terminating the prosecution of a charge. Federal double jeopardy principles do not require invalidation of the plea of guilty of second-degree murder under the facts of this case.

2. Michigan's double jeopardy protection prohibits the prosecution from deliberately splitting a criminal transaction into a series of prosecutions designed to harass the defendant and undermine the policy regarding finality of judgments. This case presents an exception to the general prohibition against prosecutions seriatim provided by the same transaction test. To apply the same transaction test to the facts of this case would go beyond the stated objective in adopting the test, namely, double jeopardy protection for defendants. Michigan's double jeopardy provisions do not bar a retrial where manifest necessity compels the termination of a proceeding, and manifest necessity includes those instances where a jury is unable to reach a verdict. Thus, this case falls within the manifest necessity exception. The defendant's plea of guilty of second-degree murder was not illusory because he could have been retried on the felony-murder charge.

3. The court properly instructed the jury with regard to the order in which to consider lesser included offenses.

4. The defendant's nolo contendere pleas were valid.

5. The sentences for the armed robbery convictions were proportionate to the defendant and the offenses committed. A sentencing court may rely upon the sentencing information report for the conviction with the highest statutory maximum sentence when sentencing a defendant convicted of multiple crimes. Because the sentences were within the guidelines' recommendation for second-degree murder and the armed robbery convictions were punishable by the same maximum sentence as second-degree murder, the court's use of the second-degree murder guidelines in formulating the armed robbery sentences was proper.

6. Ex parte communications between the trial court and the jury that the defendant claims were prejudicial were administrative in nature. No presumption of prejudice arises from administrative communications. The defendant's failure to object when the court asked if there was any objection to the way

it handled the jurors' questions implies that the defendant agreed with the court's handling of the situation.

Affirmed.

1. CRIMINAL LAW — GUILTY PLEAS — ILLUSORY BARGAINS.

A plea of guilty may be set aside where the underlying bargain upon which it is based is illusory; the plea will be upheld if the value of the bargain is genuine, valid, and known to the defendant and where it was knowingly, intelligently, and voluntarily given (MCR 6.302).

2. CRIMINAL LAW — FELONY MURDER — PREDICATE FELONIES — DOUBLE JEOPARDY — MANIFEST NECESSITY.

Retrial of a defendant for felony murder following conviction of the predicate felony and termination of the original felony-murder prosecution does not violate the federal or state constitutional double jeopardy protections where manifest necessity, rather than prosecutorial overreaching, compelled termination of the otherwise properly pursued original felony-murder charge; a jury's inability to agree upon a verdict with regard to a felony-murder charge constitutes manifest necessity for terminating the prior felony-murder prosecution (US Const, Am V; Const 1963, art 1, § 15).

3. CRIMINAL LAW — MULTIPLE CONVICTIONS — SENTENCING GUIDELINES.

Where a defendant is convicted of multiple crimes each carrying the same maximum statutory sentence, the sentencing guidelines for any one of the crimes may be used in formulating the sentences for the other convictions.

4. JURY — EX PARTE COMMUNICATIONS — APPEAL.

Before a reviewing court can determine whether an ex parte communication to a deliberating jury resulted in prejudice, it must categorize the communication as either substantive, administrative, or housekeeping; substantive communications encompass instructions on matters of law while the jury is deliberating and carry a presumption of prejudice; administrative communications encompass instructions regarding evidence and imploring the jury to continue with deliberations, they do not carry a presumption of prejudice, and the aggrieved party's failure to object to them constitutes acquiescence in the propriety of the communication; housekeeping communications include discussions between court officers and jurors regarding matters of concern wholly irrelevant to the case upon which the jurors are deliberating, they do not carry a presumption of

prejudice, and the aggrieved party's failure to object to them constitutes a waiver of any claim of error.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Nadine R. Dahm,* Assistant Prosecuting Attorney, for the people.

*John E. Meeks,* for the defendant on appeal.

Before: DOCTOROFF, C.J., and REILLY and JANSEN, JJ.

PER CURIAM. In Docket No. 131337, defendant was convicted by a jury of two counts of armed robbery, MCL 750.529; MSA 28.797, and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The jury was unable to reach a verdict on the additional charge of felony murder, MCL 750.316; MSA 28.548, and a felony-firearm charge related thereto. Rather than submitting to retrial of the felony-murder charge, defendant pleaded guilty of second-degree murder, MCL 750.317; MSA 28.549. Defendant was sentenced to serve a term of life for his second-degree murder conviction, twenty-three to forty years for each of the armed robbery convictions, and two years for the felony-firearm conviction.

In Docket No. 131338, defendant pleaded nolo contendere to charges of assault with intent to commit murder, MCL 750.83; MSA 28.278, and felony-firearm. He was sentenced to serve thirteen to twenty-five years for the assault conviction, to run consecutively to the mandatory two-year sentence for his felony-firearm conviction. The sentences in this case are to run concurrently with the sentences in Docket No. 131337.

Defendant appeals claiming that his plea of guilty of second-degree murder in Docket No. 131337 and his nolo contendere pleas to assault and felony-firearm in Docket No. 131338 were involuntary because the plea agreements were illusory, that his sentences for the armed robbery convictions violate the principle of proportionality announced in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), and that the trial court improperly communicated with the jury during deliberations. We disagree with all of these assertions of error and affirm defendant's convictions and sentences in both cases.

Defendant's convictions in Docket No. 131337 arise out of a robbery that occurred in the early morning hours of September 21, 1989. Tony Davis testified that he was at a Grand Rapids gas station after work when Charlene Bryant approached him and asked for a ride. He agreed to take Bryant to Grandville, even though he had never seen her before. Davis further testified that, when they got to Grandville, Bryant got out of the truck near a house where there were three or four Hispanic males in the front yard. Thereafter, a man whom Davis would later identify as defendant approached the truck and ordered him to get out. Davis was escorted to an area between two houses where he saw a number of other Hispanic men with Bryant.

Davis testified that the men ordered him and Bryant to their knees, whereupon defendant took Davis' wallet, his watch, and the keys to his truck. He also testified that defendant took Bryant's money as well. Davis stated that defendant left the area for a few minutes and returned with items that he believed came from his truck. Defendant then told Davis that he never wanted to see him in the area again and released him. As Davis

walked away from the scene, he heard a gunshot and saw everyone running away. Davis went directly to the police station where he told officers that he had been robbed. After Davis gave a statement, the police showed him a picture of Bryant and told him that she had been shot. Davis later identified defendant in a lineup, and the charges addressed above were filed.

In addition to Davis, two other witnesses testified at trial regarding the incident. Vanessa Sanduskey testified that she saw defendant shoot a black lady in between two houses. (Bryant was a black woman.) Jesse Torrez testified that he was with defendant on the night of the robbery and that defendant had a pistol. Torrez further testified that he heard a gunshot and saw defendant running from between the two houses and trying to stick his gun in a pouch. Torrez stated that defendant told him that he shot Bryant.

Defendant's convictions in Docket No. 131338 arise out of a separate robbery that occurred on September 16, 1989, in Grand Rapids. On that night, defendant allegedly pointed a gun at Stephen Green and demanded his money. Green gave defendant twenty dollars and, as he walked away, defendant allegedly shot him in the arm. Green later identified defendant in a lineup. On September 29, 1989, an information was issued charging defendant with one count of armed robbery, one count of felony-firearm in relation to the armed robbery, one count of assault with intent to commit murder, and one count of felony-firearm in relation to the assault. Defendant pleaded nolo contendere to assault with intent to commit murder and felony-firearm, with the understanding that the prosecution would not pursue the armed robbery and felony-firearm charges and other charges arising out of an unrelated incident.

Defendant's first argument is that his plea of guilty of the second-degree murder charge was illusory because it was based upon the erroneous assumption that he could be retried for the felony-murder charge.[1] We disagree.

A defendant's plea of guilty will not be set aside where we are convinced that it was knowingly, intelligently, and voluntarily given. MCR 6.302. However, this Court has invalidated pleas where the underlying bargain was illusory. *People v Mrozek,* 147 Mich App 304, 306-307; 382 NW2d 774 (1985). Nonetheless, if the value of the bargain is genuine, valid, and known to the defendant, the plea will be upheld. *Id.* One instance where this Court has found a plea to be illusory is where a defendant is improperly charged with a greater offense and the defendant pleads guilty of a lesser offense to avoid conviction of the greater. *Id.* at 308; *People v Goins,* 54 Mich App 456, 461-462; 221 NW2d 187 (1974). Notwithstanding a lack of consideration to support a defendant's plea, we will not set the plea aside where the facts indicate that the plea is voluntary. *Mrozek, supra* at 307.

In this case, defendant claims that a retrial of the felony-murder count would be a violation of his protection from double jeopardy because he was already convicted of the predicate felony. Defendant argues that because his plea of guilty of second-degree murder was premised upon the erroneous conclusion that he could be retried for felony murder, the plea agreement was illusory. We disagree with defendant's contention that principles of double jeopardy would have prohibited the

[1] We recognize that defendant has failed to take the necessary procedural steps to preserve the issue for review. See MCR 6.311(C). However, because of the serious constitutional questions presented, we choose to evaluate the issue on its merits. *People v Ghosh,* 188 Mich App 545, 546; 470 NW2d 497 (1991).

prosecution from retrying him for felony murder and therefore decline to set aside his plea.

Individuals are constitutionally protected from being placed twice in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v Gibbs,* 120 Mich App 485, 492-493; 328 NW2d 65 (1982). There are three separate protections afforded within the guarantee: (1) protection against prosecution for the same offense after an acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. *Ohio v Johnson,* 467 US 493, 498; 104 S Ct 2536; 81 L Ed 2d 425 (1984); *People v Crawford,* 187 Mich App 344, 347; 467 NW2d 818 (1991).

The focus of this case is limited to whether retrial of defendant for felony murder, following a conviction for the predicate felony, violates the protection against successive prosecutions for the same offense. We are not concerned with whether defendant was subjected to multiple punishments for the same offense because defendant pleaded guilty of second-degree murder, rather than felony murder. Had defendant pleaded guilty of felony murder, we would be faced with a situation where defendant was subjected to multiple punishments for the same offense. See *People v Passeno,* 195 Mich App 91, 96; 489 NW2d 152 (1992). However, defendant's plea of guilty of second-degree murder prevented the multiple punishment problem from arising.

Whether we are evaluating double jeopardy concerns under the federal or state constitution, the purposes of the protection against multiple prosecutions for the same offense are identical: to deter

prosecutorial abuse of the charging function and to preserve the finality of judgments. *Johnson, supra* at 501; *People v Sturgis,* 427 Mich 392, 398-399; 397 NW2d 783 (1986). In Michigan, the test to determine whether successive prosecutions violate the protection against multiple prosecutions for the same offense is commonly referred to as the "same transaction test." *Id.* at 401. In contrast, the United States Supreme Court merely applies a test to determine whether both prosecutions are for the "same offense." *Garrett v United States,* 471 US 773, 786; 105 S Ct 2407; 85 L Ed 2d 764 (1985).

Although the language of the Michigan Double Jeopardy Clause is "substantially identical" to that of the federal constitution, *People v White,* 390 Mich 245, 252, n 4; 212 NW2d 222 (1973); *Passeno, supra* at 95, Michigan's Double Jeopardy Clause affords a broader scope of protection than the federal clause where multiple prosecutions are concerned. *People v Carter,* 415 Mich 558, 582; 330 NW2d 314 (1982); *People v Harrington,* 194 Mich App 424, 428; 487 NW2d 479 (1992). We conclude that no matter which of the double jeopardy clauses is applied in this case, the unique circumstances involved herein constitute an exception to the general prohibition against multiple prosecutions for the same offense.

In *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977), the United States Supreme Court concluded that it was a violation of the Fifth Amendment Double Jeopardy Clause for the State of Ohio to pursue a conviction against the defendant for stealing an automobile, after the defendant was convicted and punished for the lesser included offense of joy-riding. The Court concluded that the two crimes constitute the same statutory offense. *Id.* at 168. In arriving at this conclusion,

the Court applied the familiar *Blockburger*[2] test. *Id.*

Under the *Blockburger* test, to determine whether two provisions are the same for the purpose of the Fifth Amendment Double Jeopardy Clause, courts must ascertain whether each provision requires proof of a fact that the other does not. *Id.* In concluding that the two statutes at issue in *Brown* were the same, the Court established the general proposition that prosecution for a lesser offense, after having been acquitted or convicted of a greater offense, would run afoul of the defendant's protection from multiple prosecutions. *Id.* The Court further stated that it was immaterial whether the conviction of the greater charge precedes the lesser charge or vice versa. *Id.*

The *Brown* rule prohibiting sequential convictions or prosecutions for greater and lesser offenses was revisited in *Johnson, supra.* In *Johnson,* the Supreme Court concluded that a defendant who was charged with a series of offenses and who pleaded guilty of a lesser offense would not be protected by the *Brown* holding. *Johnson, supra* at 501. The Court reasoned that a guilty plea to a lesser offense, while greater offenses remain pending, has none of the implications of implied acquittal as is the case where a defendant is convicted of a greater offense and acquitted of a lesser offense. *Id.* at 501-502.

The Court recently expanded the double jeopardy inquiry beyond the *Blockburger* test in *Grady v Corbin,* 495 US 508, 520; 110 S Ct 2084; 109 L Ed 2d 548 (1990).[3] In reliance upon a footnote in

---

[2] *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

[3] A more recent decision of the United States Supreme Court questions the extent to which courts should apply *Grady.* See *United States v Felix,* 503 US —; 112 S Ct 1377; 118 L Ed 2d 25 (1992).

*Brown, supra,* and subsequent cases interpreting *Brown,* the Court concluded that in addition to application of the *Blockburger* test, federal courts must determine whether the elements of the crime subsequently charged require the government to prove conduct that constitutes an offense for which the defendant was already tried and acquitted or convicted. *Id.* at 519-520 (relying on *Brown, supra* at 166-167, n 6, and *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 [1977]). If the answer is in the affirmative, double jeopardy principles will preclude the subsequent prosecution.

Under either the *Blockburger* test or the recently adopted *Grady* test, we would ordinarily conclude that separate trials for the predicate felony and felony murder would offend the rule established by *Brown* and its progenies. In *Harris, supra,* and *Payne v Virginia,* 468 US 1062; 104 S Ct 3573; 82 L Ed 2d 801 (1984), the Supreme Court unequivocally concluded that conviction of both the predicate felony and felony murder would violate the Fifth Amendment. In addition, both this Court and our Supreme Court have recognized that conviction or punishment for both the predicate felony and felony murder offend the traditional protections against being placed twice in jeopardy for the same offense. See *People v Wilder,* 411 Mich 328, 346-348; 308 NW2d 112 (1981); *Passeno, supra* at 96.

Thus, we hold that the federal Double Jeopardy Clause prohibits the prosecution from *intentionally* splitting a trial into one for the predicate felony and another for the substantive felony-murder charge. To do so would violate the rule that prohibits the state from dividing a criminal transaction into a series of acts and prosecuting those crimes seriatim. See 21 Am Jur 2d, Criminal Law, § 268, p 470.

With this rule in mind, we have no doubt that defendant's plea would be illusory if the prosecutor deliberately split the case into a trial for the predicate felony and a subsequent trial for felony murder. That method of charging would constitute the type of prosecutorial overreaching sought to be thwarted by *Brown* and *Johnson*: a protection ratified by our Supreme Court when it adopted the "same transaction" limitation in *White, supra* at 259. Nonetheless, we construe this case to be an exception to the general prohibition against successive prosecutions for related offenses because "manifest necessity," rather than prosecutorial overreaching, compelled termination of an otherwise properly pursued criminal prosecution.

The United States Supreme Court has recognized that certain situations are not amenable to strict application of the rules protecting a defendant from double jeopardy. *Richardson v United States,* 468 US 317, 323-324; 104 S Ct 3081; 82 L Ed 2d 242 (1984). In *Richardson,* the Supreme Court reaffirmed its previous position that in those circumstances where "manifest necessity" causes the termination of a criminal trial, the defendant's right against being placed twice in jeopardy is not implicated with respect to the charges unsuccessfully completed. *Id.* Although, in some cases, manifest necessity may be difficult to define, the Supreme Court has long recognized that a jury's inability to agree upon a verdict constitutes manifest necessity. *Id.* at 323. That deeply rooted principle was reaffirmed in *Richardson. Id.* at 324.

Our reading of the federal precedent leads us to the conclusion that the "manifest necessity" exception should be extended to this case. As support for this conclusion, we turn to the rationale behind the Supreme Court's decision in *Johnson.* In refusing to extend double jeopardy principles to pre-

clude a subsequent prosecution for untried offenses where the defendant entered a guilty plea, the Court stated as follows:

> There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws. [*Johnson, supra* at 502.]

Similarly, in this case, there has been no governmental overreaching in charging or conducting the first trial or in continuing the prosecution for felony murder when the jury was unable to agree upon a verdict regarding that charge.

For the above-stated reasons, we hold that the Double Jeopardy Clause of the Fifth Amendment would not have prohibited the prosecution from retrying defendant for felony murder because manifest necessity precluded the state from pursuing what was, in all other respects, a properly charged offense. We therefore decline to invalidate defendant's plea of guilty of second-degree murder on the basis of federal double jeopardy principles.

Because the Michigan Constitution provides more protection than the federal constitution with respect to double jeopardy, we must analyze the case law in this state to determine whether retrial of the felony-murder charge would have been precluded. Michigan's test to determine whether multiple prosecutions are barred by the state constitution is referred to as the "same transaction test." *White, supra* at 258. Under that test, the prosecution must join all those charges that grow out of a single criminal episode or occurrence. *Id.* at 254 (quoting *Ashe v Swenson*, 397 US 436, 450-454; 90 S Ct 1189; 25 L Ed 2d 469 [1970] [Brennan, J., concurring]). As was the case with the previous

analysis of federal precedent, we recognize that this state's double jeopardy protection prohibits the prosecution from deliberately splitting a criminal transaction into a series of prosecutions designed to harass the defendant and undermine the policy regarding finality of judgments. *White, supra* at 259. However, this case presents an exception to the general prohibition against prosecutions seriatim as protected by the "same transaction test."

In *White,* our Supreme Court cautioned against careless application of the "same transaction test." *Id.* at 258, n 6. The Court stated as follows:

> In adopting the same transaction test, we limit our holding to the facts of the present case and to similar factual situations.
>
> We are aware that in certain situations, strict application of the same transaction test could lead to the anomalous result of foreclosing prosecution for an offense where the state had made a diligent and good faith effort to protect the defendant's constitutional rights. [*Id.*]

We conclude that to apply the same transaction test to the facts of this case would go beyond the stated objective in adopting the test: namely, meaningful double jeopardy protection for the defendant. *Id.*

Michigan courts also recognize that where manifest necessity compels the termination of a proceeding, the state double jeopardy provisions do not bar retrial. *People v Thompson,* 424 Mich 118, 123; 379 NW2d 49 (1985) (quoting *People v Anderson,* 409 Mich 474, 483-484; 295 NW2d 482 [1980]). Manifest necessity, although elusive of definition, includes those instances where a jury is unable to reach a verdict. *Id.; People v Daniels,* 192 Mich App 658, 663; 482 NW2d 176 (1992). In the past,

we have created exceptions to the same transaction test. We conclude that this case falls within the manifest necessity exception. See *People v Bush,* 187 Mich App 316, 324-325; 466 NW2d 736 (1991), and cases cited therein. There was no evidence that the prosecutor acted in bad faith or that his efforts in charging defendant were not diligent. Thus, we conclude that this case is one of those situations where our Supreme Court recommended cautious application of the same transaction test.

Given our holding that it would have been permissible for the prosecutor to retry defendant on the felony-murder charge, it naturally follows that defendant's plea was not illusory. Defendant's benefit from the plea agreement was that he escaped a second trial where he could have been convicted of a more serious offense with more severe sentencing implications. Because defendant pleaded guilty before the commencement of the second trial for felony murder, we need not elaborate on the procedural implications of beginning a new trial in the wake of a valid predicate-felony conviction. We decline to set defendant's guilty plea aside on this ground.

Defendant's next argument is that the trial court failed to properly instruct the jury consistent with the holding in *People v Handley,* 415 Mich 356; 329 NW2d 710 (1982). In *Handley,* our Supreme Court indicated that trial courts must instruct a jury regarding the order in which to consider lesser included offenses. *Id.* at 361. Defendant argues that had the trial court instructed the jury in accordance with *Handley,* no mistrial would have been declared. Defendant's argument must be rejected because it is clear that the court gave the *Handley* instruction in its original charge to the jury. The court stated:

When you discuss the case, and I'm talking here about the homicide charges, first degree felony murder, second degree murder, and involuntary manslaughter, you must consider the crime of first degree felony murder first. If you all agree that the defendant is guilty of that crime, you may stop your discussions and return your verdict on that count.

If you believe that the defendant is not guilty of first degree felony murder, or if you cannot agree about that count, you should consider the less serious crime of second degree murder.

There is no requirement in *Handley* that a court give the instruction more than once. In any event, defendant's failure to object at the time of trial renders the issue waived. *Id.* at 360.

Defendant's next challenge is to his nolo contendere pleas to assault with intent to commit murder and felony-firearm in Docket No. 131338. Defendant contends that the plea bargain was illusory because of the double jeopardy implications discussed above. Inasmuch as we have concluded that defendant could be retried for the felony murder without violating double jeopardy, this argument must fail. In any event, this plea arrangement was separate from the charges of felony murder and defendant made no effort to withdraw his pleas. In exchange for defendant's nolo contendere pleas, the prosecution dropped a number of other charges. Defendant indicated that he understood the plea arrangement and was ready to plead nolo contendere. Thus, we conclude that defendant's pleas were valid and refuse to set them aside.

Defendant's next argument is that the sentencing court abused its discretion in regard to the application of the sentencing guidelines to the armed robbery offenses. With respect to the armed

robbery offenses, the court sentenced defendant using the guidelines for the second-degree murder conviction because the armed robbery convictions carried the same maximum as the second-degree murder conviction. Defendant contends that the sentences violated the principle of proportionality established under *Milbourn, supra.* We disagree with defendant.

In *People v Dowdy,* 148 Mich App 517, 522-523; 384 NW2d 820 (1986), this Court held that where a defendant is convicted of multiple offenses, the sentencing court need only refer to a sentencing information report for the conviction with the highest statutory maximum. In a later decision, this Court reiterated that it was permissible for the sentencing court to rely upon the sentencing information report for the highest statutory maximum when passing sentence on a defendant convicted of multiple crimes. *People v Hodges,* 179 Mich App 629, 636; 446 NW2d 325 (1989). In this case, defendant argues that his sentences for the armed robberies should have been based upon the armed robbery guidelines rather than the second-degree murder guidelines. We disagree in light of *Dowdy* and *Hodges.* Defendant's convictions for the second-degree murder and armed robberies are punishable by life imprisonment or any term of years. Defendant's sentences for the second-degree murder and armed robbery convictions were within the guidelines' recommendation for second-degree murder. Because the sentences were within the guidelines' recommendation for second-degree murder, and the armed robbery convictions were punishable by the same maximum, the court's use of the second-degree murder guidelines in formulating the armed robbery sentences does not mandate reversal. Further, contrary to defendant's assertion, we conclude that the sentences were

proportionate to this offender and the offenses committed. See *Milbourn, supra.* No abuse of discretion occurred in this case.

Defendant's final argument is that the trial court erred in communicating with the jury in the absence of counsel and in allowing the jury to review during deliberations a transcript of Tony Davis' testimony. We disagree with defendant's assertions of error.

It is true that communication with juries in the process of deliberation must be limited. *People v France,* 436 Mich 138, 149; 461 NW2d 621 (1990). However, our Supreme Court has tempered the long-standing automatic-reversal rule when an ex parte communication takes place in favor of a more realistic evaluation of the defendant's right to a fair trial. *Id.* at 166. The Court concluded that the communication must be categorized as substantive, administrative, or housekeeping, as dictated by the parameters discussed within the opinion. *Id.* at 163-164.

Substantive communications are those that include instructions regarding matters of law while the jury is deliberating. *Id.* at 163. There is a presumption of prejudice where this type of communication occurs. *Id.* Administrative communications encompass instructions regarding evidence and imploring the jury to continue with deliberations. *Id.* No prejudice is presumed, and the defendant's failure to object constitutes acquiescence in the propriety of the communication. *Id.* Finally, housekeeping communications include discussions between court officers and jurors regarding matters of concern wholly irrelevant to the case upon which the jurors are deliberating. *Id.* at 164. There is a presumption of no prejudice in relation to these instructions and a failure to object consti-

tutes a waiver of any claim of error associated with the communication. *Id.*

Contrary to defendant's categorization of the communication at issue as substantive, we believe that the communication was administrative in nature. The court did not instruct the jury with regard to any issue of law other than to implore them to use their collective recollection to evaluate Mr. Davis' testimony. The court indicated that it did not want to furnish a copy of the transcript unless it was absolutely necessary. Following this communication, the court asked counsel for the prosecution and defendant whether they had any objection to the way that it handled the jurors' questions. Neither counsel objected. Defendant's failure to object at the time the court addressed the jury or immediately thereafter implies that defendant agreed with the manner in which the court handled the situation.

Affirmed.

JANSEN, J., concurred in the result only.