# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 12, 2016

Plaintiff-Appellee,

v

No. 323403
Ingham Circuit Court

JORDAN LEWIS DUNN,

LC No. 14-000028-FC

Defendant-Appellant.

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his conviction of first-degree premediated murder, MCL 750.316(1)(a). For the reasons explained in this opinion, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant struck and killed Benjamin Berlin with his pick-up truck at a mobile home park on October 30, 2013. Shortly before this incident, defendant posted on Facebook, stating: "I wanna kill" and, later, "i prob wont be here im bout to go do sumthin stupid and ill b gone for awhile lol for reall see ya." Not long after posting these comments, defendant and his friend, Corey McCulloch, went to pick up their friend, Nicole Benn, at the mobile home park where Berlin also lived with his family. On his way to collect Benn, defendant drove erratically through the trailer park, speeding well-above the 15 mph posted limit, running stop signs, and squealing his tires. Berlin and others yelled at defendant to slow down; and, when defendant stopped to pick up Benn, a resident of the park approached the vehicle and asked them to slow down. Nonetheless, after picking up Benn, defendant continued speeding through the park.

As defendant drove toward the park's exit, he again passed Berlin, who was outside with several family members and friends. Although there are some discrepancies among the witnesses' descriptions of what followed, the evidence indicates that defendant ran a stop sign at a nearby intersection and, as a result, Berlin again yelled out to defendant to slow down. In response, defendant abruptly stopped his vehicle, squealing his tires in the process, and then quickly reversed. After defendant reversed, Berlin was positioned somewhat to the front of the truck. Defendant then paused, perhaps as long as 30 to 45 seconds. Defendant then quickly accelerated, driving straight for Berlin, and struck him with the truck. Berlin went flying over

-1-

the hood of the truck and hit his head on the windshield before eventually falling to the ground. Berlin later died from his injuries after being removed from life support.

After hitting Berlin, defendant did not stop. He drove home and, rather than park in the driveway, he parked on the side of the house in an area partially concealed by trees, making it more difficult to see his truck from the road. Defendant later dropped Benn down the road from the mobile home park, but he avoided going into the park. The following day, when other efforts to find defendant proved unsuccessful, police went to look for defendant at his grandmother's house. While police were there, defendant arrived as a passenger in a vehicle. Ignoring police requests to stop, the vehicle fled, prompting a police pursuit. When the vehicle eventually stopped, defendant then fled on foot until he was apprehended by police.

Defendant was charged with one count of open murder, MCL 750.318. Following a lengthy trial, the jury received instructions on first- and second-degree murder and involuntary manslaughter. The jury convicted defendant of first-degree premediated murder. Defendant filed a motion for a new trial in the trial court, arguing that the evidence adduced at trial was insufficient to support the verdict and that his trial counsel had provided ineffective assistance. The trial court denied the motion. Defendant appeals to this Court as of right.

I. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant argues that the prosecutor presented insufficient evidence to support his first-degree murder conviction and that, in particular, the prosecutor failed to establish premeditation. According to defendant, the scene was "frantic" and "chaotic," and defendant made his decision in a matter of seconds without sufficient time to reflect. In making this argument, defendant highlights the inconsistencies in the testimony offered by the various prosecution witnesses, he champions testimony favorable to his version of events, and he discounts the significance of the Facebook posts. Ultimately, defendant admits that he "may have acted rashly in the heat of the moment;" but he maintains that "he is not a killer."

We review a challenge to the sufficiency of the evidence do novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). We "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id.* "Minimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001).

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (citation omitted). "Some time span between the initial homicidal intent and

the ultimate killing is necessary to establish premeditation and deliberation." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). "While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a second look." *Plummer*, 229 Mich App at 300 (internal quotation marks and citation omitted). "Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *Id.* at 301. Factors relevant to the consideration of premedication and deliberation include "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Orr*, 275 Mich App 587, 591; 739 NW2d 385 (2007) (citation omitted).

In this case, with regard to defendant's conduct before the killing, Benn testified that before defendant arrived to pick her up at about 7:30 p.m., she saw two posts on Facebook that were authored by "Sean Smoke," an alias used by defendant. The first, dated October 30 at 6:37 p.m., stated, "I wanna kill." The second, dated October 30 at 7:08 p.m., stated, "i prob wont be here im bout to go do sumthin stupid and ill b gone for awhile lol for real see ya." Although Berlin was not specifically mentioned as the target of defendant's intentions, it is reasonable to infer from the posts that—less than 90 minutes before striking Berlin with his pick-up truck— defendant was deliberating a killing as well as the possible consequences of such a crime and that he had in fact formed an initial homicidal intent. See *Unger*, 278 Mich App at 229; *People v Eliason*, 300 Mich App 293, 301; 833 NW2d 357 (2013).

Shortly after posting about his deliberations, defendant then drove to the trailer park, where he drove dangerously through the park and ultimately acted upon his previously expressed desire to kill by using his truck as a weapon against Berlin. That is, the facts and circumstances surrounding the killing itself support the conclusion that defendant acted with premeditation and deliberation. Testimony shows that, after Berlin shouted, defendant could have continued driving, but he chose to stop his vehicle and to reverse. According to McCulloch, after defendant reversed, 30 to 45 seconds passed before defendant drove his truck forward at Berlin. Eyewitness testimony established that defendant aimed his truck at Berlin, driving directly at him or even turning to aim for Berlin. McCulloch stated that defendant "floored it," Benn testified that defendant "gunned it," and other testimony confirmed that defendant quickly accelerated toward Berlin. In other words, the evidence establishes that—after stopping, reversing, and pausing—defendant deliberately used his truck as a weapon, purposefully running Berlin down on the road. The moments that passed as defendant stopped, reversed, and paused before driving forward were sufficient for him to deliberate about the action he would take and the consequences of it. See *People v Tilley*, 405 Mich 38, 46; 273 NW2d 471 (1979) (concluding that an interval of a minute or less between procuring gun and firing was evidence of premeditation and deliberation).

Additionally, defendant's conduct after the commission of the crime provides further circumstantial evidence of deliberation and premeditation. Defendant not only fled the scene, but also later fled from the police when he encountered them outside his grandmother's house. Evidence of flight can support an inference of guilt, and it was for the jury to determine whether the flight occurred under circumstances indicative of guilt. *Unger*, 278 Mich App at 226. Additionally, a police officer testified that defendant's truck was found "kind of concealed by

trees back by the bonfire." Efforts at concealment after a killing, in this case attempting to hide what was essentially the murder weapon, can serve as evidence of premeditation and deliberation. See *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003); *People v Haywood*, 209 Mich App 217, 230; 530 NW2d 497 (1995).

Given all the facts and circumstances, viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence of premeditation to sustain defendant's conviction of first-degree murder.[1]

### III. *HANDLEY* JURY INSTRUCTION & VERDICT FORM

Next, defendant argues that the jury instructions viewed together with the verdict form failed to apprise the jury of the proper order of deliberations as set forth in *People v Handley*, 415 Mich 356, 361; 329 NW2d 710 (1982) with regard to consideration of principal and lesser included offenses. In particular, although the trial court read M Crim JI 3.11, which correctly imparts the *Handley* ordering information, defendant contends that the trial court's additional comments confused the issue and the jury form incorrectly forced the jury to choose between not guilty and guilty before considering the next lesser offense, without clarifying that they could consider the lesser offense if they were merely unable to agree whether to convict or acquit on the greater offense. Defendant maintains that that this error entitles him to a new trial and that, in the alternative, counsel provided ineffective assistance by failing to object.

Initially, we note that defendant waived any claim of error regarding the jury instructions because defense counsel expressed approval with the instructions at trial. See *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). Nonetheless, because defendant challenges counsel's effectiveness in failing to object to the purportedly defective instructions, we will consider the propriety of the jury instructions in the context of resolving defendant's claim of ineffective assistance. See *id.* at 329-330. To establish a claim of ineffective assistance of counsel, the defendant must show "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (internal quotation marks and citation

---

[1] In his discussion of the sufficiency of the evidence, defendant also intermittently asserts that the verdict was against the great weight of the evidence. However, defendant fails to articulate the legal standards applicable to this analysis or to differentiate this analysis from his sufficiency argument, meaning that the issue has been abandoned. *People v Huffman*, 266 Mich App 354, 371; 702 NW2d 621 (2005). In any event, our review of the evidence shows that it did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Although there were conflicts in the evidence and testimony presented, credibility questions are within the exclusive province of the jury, and conflicting testimony does not warrant a new trial. *Id.* at 469-470.

omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Hawthorne*, 474 Mich 174, 182; 713 NW2d 724 (2006) (internal quotation marks and citation omitted). "Challenges to jury instructions are considered in their entirety to determine whether the trial court committed error requiring reversal." *Eisen*, 296 Mich App at 330 (internal quotation marks citation and omitted). When conducting this analysis, "[t]he verdict form is treated as, essentially, part of the package of jury instructions." *Id.* "[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011). Likewise, defense counsel will not be deemed constitutionally ineffective for failing to object to an imperfect instruction that fairly presents the applicable law and sufficiently protects the defendant's rights. *People v Clark*, 274 Mich App 248, 257; 732 NW2d 605 (2007).

Relevant to defendant's argument, in *Handley*, the Court set forth the necessity of instructing the jury on the ordering of deliberations when a case involves a principal offense as well as lesser included offenses. The Court explained:

> [A] jury . . . must be told to consider the principal charge first. It should then be instructed that if it fails to convict or acquit *or is unable to agree* whether to convict or acquit on that offense, it may then turn to lesser offenses. The correct instruction would be that after the jury has given consideration to the greater offense, it may turn to lesser offenses *either* if it finds the defendant not guilty of the greater offense *or* if it is unable to agree on whether the defendant is guilty or not guilty of the greater offense. The judge may add that it is for the jury to decide how long to spend considering the greater offense before turning to a consideration of lesser offenses or, stated differently, it is for the jury to decide whether, having failed to reach an agreement on guilt or innocence on a greater offense, to spend more time in an attempt to reach unanimous agreement on the greater offense or whether the time has come to turn to lesser offenses. The judge may also add that of course the jury will not turn to lesser offenses if it finds the defendant guilty of the greater offense. [*Handley*, 415 Mich at 361.]

In this case, consistent with *Handley*, the trial court instructed the jury in keeping with M Crim JI 3.11(6), in relevant part, as follows:

> In this case, there are several different crimes that you may consider. When you discuss the case, you must consider the crime of first-degree, premeditated murder first. If you all agree that the Defendant is guilty of that crime, you may stop your discussions and return your verdict.
>
> If you believe that the Defendant is not guilty of first-degree premeditated murder, of if you cannot agree about that crime, you should consider the less serious crimes of second-degree murder and/or involuntary manslaughter.

You should decide how long to spend on first-degree premediated murder before discussing second-degree murder and/or involuntary manslaughter.

You can go back to first-degree murder after discussing second-degree murder and/or involuntary manslaughter if you want.

This was an accurate statement of law that fairly presented the issues and adequately protected defendant's rights. Indeed, M Crim JI 3.11(6) was patterned on *Handley*[2] and M Crim JI 3.11 is considered "a sound instruction . . . ." *People v Pollick*, 448 Mich 376, 386; 531 NW2d 159 (1995). See also *People v Gonzalez*, 197 Mich App 385, 399; 496 NW2d 312 (1992).

Despite this proper instruction, defendant nonetheless maintains that the trial court confused the jury with additional incorrect comments and the use of an improper jury verdict form. In this regard, immediately after giving the instruction detailed above, the trial court went on to describe the jury form as follows:

Now, we do have a jury verdict form that we will be sending back to the jury when you go in. And you only can return one verdict for the charge. So we have here Count 1, homicide, open murder: Not guilty or guilty of first-degree murder. Then it says if you decide that the Defendant is guilty of first-degree murder, you may stop your deliberations and return your verdict. There is a spot for the foreperson to sign.

If you find that the Defendant is not guilty of first-degree murder, you may also consider the less serious crime of second-degree murder, which also has a not guilty or guilty. If you decide that the Defendant is not guilty, either first-degree or second-degree, you may consider the less serious crime of involuntary manslaughter. That also has guilty or not guilty. So it's more accurate to say that you can only return one guilty verdict for any charge. You have to consider not guilty on all three. When I said you can only return one verdict for this charge, that's only one guilty verdict for this charge in this matter.

Defendant now contends that these instructions, which were mirrored on the jury verdict form, improperly suggested that the jury could not move on to consideration of a lesser charge unless they reached a guilty or not guilty verdict, without clarifying that they could also move on to a lesser charge if they simply could not agree. See *Handley*, 415 Mich at 361. Although the jury had previously been instructed accurately on this point, relying on *People v Hess*, 214 Mich App 33, 37; 543 NW2d 332 (1995), defendant contends that, because there were correct and incorrect instructions presented to the jury, it must be presumed that the jury followed the incorrect charge.

Considering the instructions as a whole, we do not see error requiring reversal. Although, if viewed in isolation, the jury form and the court's explanation of the form did not

---

[2] See M Crim JI 3.11, Use Note.

impart all the information required by *Handley*, the trial court in fact gave the required *Handley* instruction, expressly stating that the jury could move to consideration of a lesser offense if they could not reach a unanimous verdict regarding the principal charge. The form and the court's subsequent instructions regarding the form did not overtly contradict this clearly articulated point of law. That is, the verdict form and the court's additional comments were silent on what the jury should do if it could not agree on the principal charge, and thus there was no conflict with the court's earlier explicit instruction to move on to consideration of a lesser charge if the jury could not agree.[3] When considering the instructions as whole, the latter instructions simply explained the use of the verdict form, in particular the use of the "guilty" and "not guilty" check boxes which appeared on the form for each offense. See generally *People v Wade*, 283 Mich App 462, 468; 771 NW2d 447 (2009) (holding that a jury verdict form has to give the jury the option of returning a general not guilty verdict or a not guilty verdict with regard to each offense). In short, even if the form and the court's instruction thereon were imperfect on their own, when they are read in conjunction with the express *Handley* instruction, we see no basis for reversing defendant's conviction.

Indeed, even if the verdict form or the trial court's explanation of the form arguably created some confusion by implying that the jury could not move on to a lesser offense without first reaching a unanimous verdict on the principal charge, it is plain that the trial court later again clarified this point in response to a jury question, and a jury will not be presumed to have followed an incorrect instruction that has been corrected by the trial court. See *People v Hardesty*, 139 Mich App 124, 132; 362 NW2d 787 (1984). In particular, compliant with *Hadley*, the trial court responded "yes" when the jury asked: "If we do not unanimously agree on a charge for 1st degree, and we do have a unanimous guilty verdict on a lesser charge, can we render a verdict on the charge we agree on?"[4] The trial court's response to the jury's question again made plain that the jury could consider a lesser charge before reaching a unanimous

---

[3] Cf. *Hess*, 214 Mich App at 36 (presuming the jury followed incorrect instruction when the jury was instructed that accident was a defense to manslaughter and also instructed that accident is not a defense to manslaughter). See also *People v Clark*, 340 Mich 411, 418; 65 NW2d 717 (1954) ("Where *conflicting* instructions are given, one erroneous and the other correct, we must presume that the jury followed the erroneous instruction." (emphasis added)).

[4] Defendant contends that the jury's question evinces the fact that the jury reached a unanimous verdict regarding a lesser offense, but that they refrained from returning such a verdict because of their confusion over whether they had to reach a unanimous verdict on the principal charge before considering the lesser offenses. However, the jury's question is plainly hypothetical, asking what they should do "if" they "do not unanimously agree on a charge for 1st degree, and we do have a unanimous guilty verdict on a lesser charge[.]" Moreover, the jury went on to deliberate for several more hours after the trial court's affirmative response to their question, belying a claim that they had reached a verdict. Indeed, if, at the time they posed their question, they had reached a verdict regarding a lesser offense without having reached a unanimous verdict on the principal offense, this fact would only demonstrate the jury's understanding of the concept that it was free to move on to deliberation of lesser offenses if it could not reach a unanimous verdict regarding the principal offense.

verdict on first-degree murder. Consequently, defendant has not shown error entitling him to reversal, and he has not established his ineffective assistance of counsel claim.

### III. VOLUNTARY MANSLAUGHTER & ACCIDENT INSTRUCTIONS

With regard to jury instructions, defendant also argues that trial counsel was ineffective for failing to request an instruction on accident and voluntary manslaughter because the evidence at trial supported the giving of these instructions. For example, defendant emphasizes that numerous people were yelling at defendant, that Berlin used profanity, and that there was evidence that Berlin may have swung at the vehicle. McCulloch also testified that there were numerous people around at the time of the incident and that, although he did not fear for his safety, he felt "a little bit" "threatened." Defendant maintains that these circumstances merited instructions on accident and voluntary manslaughter such that counsel acted unreasonably by failing to request these instructions, particularly when counsel in fact argued at trial that defendant made his decisions in a "snap second," without time to calm down after being provoked.

Voluntary manslaughter is a lesser included offense of murder. *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). "Consequently, when a defendant is charged with murder, an instruction for voluntary . . . manslaughter must be given if supported by a rational view of the evidence." *Id.* See also MCL 768.32(1). Generally, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich at 535. Whether the provocation was adequate is "that which would cause a *reasonable person* to lose control." *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998). While the "determination of what is reasonable provocation is a question of fact for the factfinder," the trial court may determine as a matter of law that no reasonable jury could find that the provocation was adequate. *People v Pouncey*, 437 Mich 382, 390-391; 471 NW2d 346 (1991).

In this case, trial counsel was not ineffective for failing to request an instruction on voluntary manslaughter because a rational view of the evidence did not support the instruction, and counsel cannot be considered ineffective for failing to advocate a meritless position. *Mack*, 265 Mich App at 130. At most, the evidence shows that, while outside with a group of family and friends, Berlin may have used profanity when yelling for defendant to slow down and that he may have swung at the truck. During these events, defendant was, at all times, in the safety of his vehicle, and he had the option of simply driving away. Cf. *Pouncey*, 437 Mich at 391-392. In these circumstances, a reasonable person would not view Berlin's minor insults as sufficient provocation for deliberately running him down with a pick-up truck. See *id.* at 389, 391. Furthermore, the testimony established that defendant had a "cooling off" period before he struck Berlin, during the time that he stopped, reversed, and then paused for 30 to 45 seconds before driving forward. This time was a reasonably sufficient "cooling off" period to alleviate whatever passions were incited by Berlin's words and conduct. See *People v Wofford*, 196 Mich App 275, 280; 492 NW2d 747 (1992). Quite simply, given this evidence, a reasonable jury could not conclude that "defendant's emotions [are] so intense that they distort the defendant's practical reasoning." *Pouncey*, 437 Mich at 389. For this reason, the evidence did not warrant an

instruction on voluntary manslaughter, and counsel was not ineffective for failing to make a meritless request.[5] See *Mack*, 265 Mich App at 129.

Moreover, even if counsel should have requested such an instruction, defendant has not shown prejudice. The jury was in fact given the option of lesser included offenses aside from voluntary manslaughter but they nonetheless convicted defendant of first-degree murder. "[W]here a defendant is convicted of first-degree murder, and the jury rejects other lesser included offenses, the failure to instruct on voluntary manslaughter is harmless." *Sullivan*, 231 Mich App at 520. See also *People v Raper*, 222 Mich App 475, 483-484; 563 NW2d 709 (1997). Thus, defendant was not prejudiced by counsel's failure to seek this instruction, and his ineffective assistance of counsel claim must fail.

Defendant's argument that he is entitled to a new trial because counsel failed to request an instruction regarding an accident defense fails for the same reasons. First, the instruction was not warranted because there was no evidence that defendant accidentally or inadvertently struck Berlin. Cf. *Mills*, 450 Mich at 82. Second, instructed on first-degree and second-degree murder as well as involuntary manslaughter, the jury returned a verdict of first-degree murder, which required a finding of intent wholly inconsistent with a finding of accident. See *People v Hawthorne*, 474 Mich 174, 185; 713 NW2d 724 (2006). If the jury had any doubts with regard to defendant's intent, it would have returned a lesser verdict. Cf. *id.* On these facts, defendant has not shown a reasonable probability that the result would have been different with an accident instruction. Therefore, his ineffective assistance of counsel claim must fail.

## IV. ADMISSIBILITY OF ELECTRONIC EVIDENCE

Defendant argues that trial counsel provided ineffective assistance by failing to object to the admission of the Facebook posts. According to defendant, counsel should have objected to the messages because they were irrelevant, MRE 401, unduly prejudicial, MRE 403, not properly authenticated, MRE 901, and not the original writing, MRE 1002.

As discussed in more detail below, defendant has not shown that counsel was unreasonable in failing to challenge the admission of the Facebook posts or that such an objection would have altered the outcome of the proceedings. See *Douglas*, 496 Mich at 592. The decision to object or to move for the exclusion of evidence is typically a matter of trial strategy, *Eliason*, 300 Mich App at 302-303; and, we will not second-guess counsel on matters of trial-strategy, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). As noted, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden to prove

---

[5] Insofar as defendant notes on appeal that his counsel presented an argument consistent with voluntary manslaughter without requesting such an instruction, this does not demonstrate defendant's entitlement to a voluntary manslaughter instruction. Counsel's arguments are not evidence, and the presentation of a theory during arguments "does not provide the supportive evidence needed to warrant a jury instruction of the same." *People v Mills*, 450 Mich 61, 82 n 15; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).

otherwise." *Mack*, 265 Mich App at 129. Counsel will not be considered ineffective for failing to advocate a meritless position. *Id.* at 130.

## A. MRE 901

Under MRE 901(a), authentication constitutes a condition precedent to admissibility. To merit admission, there must be sufficient evidence "to support a finding that the matter in question is what its proponent claims." MRE 901(a); *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013). MRE 901(b) sets forth a non-exhaustive list of methods of authentication, including testimony from a witness with knowledge that a matter is what it is claimed to be, MRE 901(b)(1), and evidence of "distinctive characteristics," meaning "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," MRE 901(b)(4). "It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility." *McDade*, 301 Mich App at 353 (citation omitted). Moreover, "a trial court may consider *any* evidence regardless of that evidence's admissibility at trial, as long as the evidence is not privileged, in determining whether the evidence proffered for admission at trial is admissible." *Id.* (citation omitted).

In this case, the posts in question were made on an account under the name of "Sean Smoke." Both Benn and McColloch, friends of defendant and witnesses with knowledge, confirmed that this was defendant's alias and defendant's Facebook account.[6] For example, Benn identified the profile picture as a Halloween photograph of defendant, and she explained that she knew it was defendant's account because they had been in contact through the page, during the 3 or 4 years that they had been Facebook friends. This was sufficient evidence to establish that the posts were made on a page belonging to defendant. See MRE 901(b)(1). See also *Campbell v State*, 382 SW3d 545, 550 (Tex App 2012) (recognizing that one of the problems with authenticating social media postings is that "anyone can establish a fictitious profile under any name"); *Smith v State*, 136 So 3d 424, 432 (Miss 2014) (same).

Nonetheless, defendant argues that counsel should have objected because the prosecutor failed to establish that defendant personally posted the specific comments in question. See *Campbell*, 382 SW3d at 550 (recognizing that a second problem with authenticating social media postings is that "a person may gain access to another person's account by obtaining the user's name and password," meaning that it "cannot be certain that the author is in fact the profile owner"). However, defendant makes this claim in the ineffective assistance context and, in this context, he has not shown counsel performed unreasonably or that a different result would have been probable.

In particular, we note that defendant has never actually denied authorship of the first post in question—not in the trial court, not in his affidavit supporting his request for a new trial, and

---

[6] Out of the presence of the jury, Benn explained that defendant used a pseudonym on Facebook because he was a registered sex offender subject to prohibitions regarding his Internet usage.

not on appeal. In such circumstances, counsel had no reason to doubt the authenticity of the post and was not unreasonable in pursuing a trial strategy other than an objection under MRE 901. Indeed, as evinced by an affidavit from Detective Bradley Delaney, presented by the prosecutor in response to defendant's motion for a new trial, defendant admitted to police that he made the first posting. Defendant's admission of authorship would serve as sufficient evidence for authentication purposes. See *Smith*, 136 So 3d at 433. And, defense counsel was evidently aware of this interview given that, at trial, there was discussion, out of the jury's presence, as to whether the attorneys could question the detective about defendant's explanations for the posts. In light of defendant's admission during this interview, any objection under MRE 901 would have been futile, and counsel will not be considered ineffective for failing to make a futile objection. See *Mack*, 265 Mich App at 130. Indeed, it was sound trial strategy for counsel not to object to the authentication of the posts because the prosecution may have been prompted to elicit foundational testimony from Detective Delaney regarding defendant's admissions before the jury. Such testimony would have been damaging to the theory defense counsel argued to the jury—that defendant's responsibility for the posts was pure speculation.

We note that, according to Detective Delaney's affidavit, during his interview with police, defendant denied making the second posting. However, given the temporal proximity between the two posts, the connection in the content of the two messages, and the circumstances surrounding the post (i.e., defendant's reckless and even "stupid" behavior shortly after this posting), we are not persuaded that defendant's denial of authorship would undermine the authentication of the second post or that counsel would have prevailed on an objection to this evidence. See *McDade*, 301 Mich App at 353. In any event, the first post would still have been admitted and this first, more incriminating, post was, on its own, strong evidence of defendant's state of mind, such that defendant cannot show prejudice from counsel's failure to object to the second posting. On the whole, defendant has not demonstrated that counsel provided ineffective assistance by failing to object to the Facebook posts on the basis of MRE 901.

B. MRE 401 AND MRE 403

In addition, contrary to defendant's arguments, the Facebook posts were relevant and not unfairly prejudicial, meaning that counsel was not ineffective for failing to challenge the admission of the postings on this basis. Under MRE 401, "relevant evidence is any fact that is of consequence to the determination of the action." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995). The posts show that, less than 90 minutes before he drove his truck into Berlin, defendant made grave remarks about wanting to kill someone and made ominous predictions about being gone for a while as a result of doing something "stupid." The posts were thus highly illustrative of defendant's state of mind just prior to the killing. Cf. *Eliason*, 300 Mich App at 301; *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989). Indeed, the posts were evidence of premeditation and deliberation because they suggested that defendant had considered killing and the consequences of killing before he committed murder. Cf. *Eliason*, 300 Mich App at 301. While decidedly incriminating, the posts were not overly graphic or sensational, nor did they interject extraneous considerations into the trial. See *Mills*, 450 Mich at 75; *Fisher*, 449 Mich at 452. Given the strong probative value of the posts with regard to defendant's state of mind, the posts' probative value was not substantially outweighed by the danger of unfair prejudice. See MRE 403; *People v Sabin (After Remand)*, 463 Mich 43, 70-71;

614 NW2d 888 (2000). Counsel was not ineffective for failing to raise a futile objection to the posts on the basis of MRE 401 and MRE 403.[7] Cf. *Eliason*, 300 Mich App at 302.

## C. MRE 1002

We also reject defendant's argument that the posts should have been excluded under the "best evidence rule." "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." MRE 1002. In this case, defendant appears to argue that his computer hard drive and/or an electronic copy of the postings should have been admitted as the "best evidence." However, under MRE 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." As discussed *supra*, any objections regarding authenticity would have proved meritless, and we can see nothing in the circumstances that would make it unfair to admit duplicates of the Facebook postings such as a printout. Consequently, duplicates were admissible under MRE 1003, and object by counsel on this basis would have been futile, and defendant has not shown prejudice. Overall, counsel was not ineffective for failing to object based on MRE 1002.

## V. EXPERT TESTIMONY

Next, defendant challenges the expert testimony of Dr. John Bechinski, the forensic pathologist who performed Berlin's autopsy. Bechinski testified that the cause of death was blunt force trauma and the manner of death was homicide. However, defendant notes that there was no physical evidence to show whether death was intentional or accidental, and defendant contends that Bechinski's opinion regarding the manner of death was improper because, in reaching this conclusion, Bechinski relied on hearsay from witnesses at the scene. According to defendant, this reliance on hearsay deprived defendant of his constitutional right to cross-examine witnesses and counsel was ineffective for failing to object.

There is no merit to defendant's argument. Bechinski was qualified as an expert in forensic pathology and performed the autopsy on the victim. As a forensic pathologist, it was within the proper scope of Bechinski's expert opinion to testify regarding both the cause and manner of death. See MRE 702; *Unger*, 278 Mich App at 251-252; *People v Yost*, 278 Mich App 341, 395; 749 NW2d 753 (2009). This testimony was not impermissible merely because it embraced the ultimate issue at trial. See MRE 704; *People v Smith*, 425 Mich 98, 106; 387

---

[7] Defendant also briefly challenges the Facebook posts to the extent that the evidence admitted also contained hearsay in the form of comments from defendant's "friends" on Facebook in response to his original postings. See MRE 801. Even if these remarks should not have been admitted, we cannot see that defendant was prejudiced by counsel's failure to object. The significance of defendant's postings was his state of mind as expressed in the posts authored by defendant. It is not reasonably probable that his friends' various comments, even if objectionable, affected the outcome of the proceedings.

-12-

NW2d 814 (1986). Moreover, "an expert witness may rely on hearsay evidence when the witness formulates an opinion," *People v Lonsby*, 268 Mich App 375, 383; 707 NW2d 610 (2005), meaning that Bechinski's opinion is not objectionable merely because he considered statements made by individuals present at the scene.

However, it is true that, under MRE 703, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence. . . ." The evidence upon which the expert based his opinion may be conditionally received, "subject to the condition that the factual bases of the opinion be admitted in evidence thereafter." MRE 703. According to Bechinski's testimony, his opinion was based on his examination of Berlin's body, which showed injuries consistent with a history of having been intentionally struck by a motor vehicle. Beckinski explained that he had seen other cases where someone used a motor vehicle as a deadly weapon. Thus, his opinion was based in large part on his own observations and experience, and was properly admitted. See MRE 702; MRE 703. We recognize that Bechinski conceded that his opinion of "homicide" was based, in part, on the "circumstances" of the crash that had been reported to him. However, to the extent defendant emphasizes that these circumstances included observations made by witnesses at the scene or facts collected by police, numerous eyewitnesses and police officers testified at trial, meaning that the facts upon which Bechinski based his opinion were admitted into evidence as required by MRE 703.[8] Thus, defendant has not shown anything improper in Bechinski's testimony, and counsel did not provide ineffective assistance by failing to object.

Further, defendant has not shown a reasonable probability of a different outcome absent Bechinski's opinion on "homicide." From Bechinski's testimony it is quite clear that his definition of "homicide" was not intended "to carry any legal significance," but was "used for statistical purposes only." In this respect, Bechinski defined homicide as "when one kills another person" through "a volitional act." Given this broad definition, it is clear that Bechinski was not opining that defendant was guilty of first-degree murder, and thus Bechinski's "homicide" classification would not have warranted a first-degree murder verdict, which requires more than a volitional act resulting in death. See generally *Mendoza*, 468 Mich at 534-540; *Bennett*, 290 Mich App at 472. In these circumstances, it does not seem reasonably probable that Bechinski's testimony affected the outcome of the proceedings. Further, the jury was instructed to evaluate expert testimony in the context of the other evidence in the case and that, when assessing expert testimony, they should "think carefully about the reasons and facts that he gave for his opinion and whether those facts are true." "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The instructions in this case properly informed the jury how to weigh Bechinski's expert opinion, minimizing any potential prejudice. Defendant is not entitled to relief on this basis.

## VI. CUMULATIVE ERROR

---

[8] Given the eyewitness testimony at trial and defendant's opportunity to cross-examine these witnesses, there is no merit to his cursory claim that he was denied an opportunity for cross-examination. See generally *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011).

Finally, defendant contends that, even if the individual errors standing alone do not require reversal, the cumulative effect of those errors merits a new trial. However, "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Having found no errors in this case, the cumulative error doctrine is inapplicable.[9]

Affirmed.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray

---

[9] On appeal defendant also requests a remand for a *Ginther* hearing. For the reasons explained, defendant's claims of ineffective assistance of counsel are clearly without merit. Nothing in his arguments on appeal, or the materials he presented to the trial court in support of his request for a *Ginther* hearing, suggests that his position would benefit from an evidentiary hearing. His request is therefore denied.

-14-