*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 20, 2020

Plaintiff-Appellee,

v

No. 344633
Gratiot Circuit Court
LC No. 10-005921-FC

ROBERT LAWRENCE WILKINS,

Defendant-Appellant.

Before: BORRELLO, P.J., and METER and RIORDAN , JJ.

PER CURIAM.

In 2010, defendant pleaded no contest to first-degree criminal sexual conduct, MCL 750.520b(1)(a) (victim under 13 years of age), and assault with a dangerous weapon (felonious assault), MCL 750.82. Defendant was sentenced, in accordance with a plea agreement, to 25 to 40 years' imprisonment for the CSC-I charge and 17 to 48 months' imprisonment for the felonious assault charge. Thereafter, in February 2017, defendant filed a motion for relief from judgment, which the circuit court denied. Defendant appeals by delayed leave granted.[1] We affirm.

## I. BASIC FACTS

In November 2009, defendant's wife reported an assault to local police. The responding officer observed visible marks on her neck and face as well as cuts on her hands. Defendant's wife informed the officer that defendant had attacked her when she confronted him about sexually assaulting their seven-year-old daughter, EW. During the confrontation, defendant grabbed his wife, put a knife to her neck, and tried to stab her several times before she was able to convince him to stop and he fled the home. Defendant also admitted that he had performed "anal sex" on EW. Defendant was charged with assault with intent to commit CSC, MCL 750.520(g)(1), and felonious assault.

---

[1] *People v Wilkins*, unpublished order of the Court of Appeals, entered December 18, 2018 (Docket No. 344633).

During a subsequent interview and physical examination, EW reported that she had experienced multiple incidents of sexual contact by defendant over the course of two years that included digital and penile penetration, improper touching, and fellatio. Further, the examining physician noted "a very prominent rugal fold from 11:00 to 12:00 with a stretched pooched area of skin at 12:00 in the anterior midline. This stretched skin can either be normal or could be the consequence of sodomy." Defendant's charges were subsequently amended to include three counts of CSC-I, two counts of second-degree criminal sexual conduct (CSC-II), one count of assault with intent to commit CSC, and one count of felonious assault.

At the preliminary hearing, defendant's wife testified about the night of the assault, and defendant's admissions; however, when EW began testifying about defendant's sexual acts, defense counsel asked for a recess and ultimately elected to waive the preliminary hearing. Subsequently, defendant entered a no-contest plea to felonious assault and CSC-I under a *Killebrew* plea agreement.[2] As the basis for the plea, the court received and reviewed two documents—the police report and physician's report. Defendant was informed of the minimum sentences for each of the offenses to which he was pleading and was advised that he would be subject to a lifetime of electronic monitoring, as well as mandatory AIDS and STD testing. Defendant acknowledged that he was giving up his right to a jury trial and agreed that the information in the police report was the factual basis for his plea and the plea was entered by his own free choice. The court accepted defendant's plea and ultimately sentenced him as indicated above.

However, four years after defendant's wife passed away, defendant filed a motion for relief from judgment, asking the court to withdraw his plea on the basis of ineffective assistance of counsel. In support of the motion, defendant submitted an affidavit indicating that defense counsel had failed to advise him on various aspects of the case, and he asserted his "actual and absolute innocence." The court instructed the prosecution to file a response, and then ultimately denied defendant's motion. We granted delayed leave to appeal to consider "whether or not there was ineffective assistance of counsel."[3]

## II. APPLICABLE STANDARDS OF REVIEW

"The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008). For a claim of ineffective assistance of counsel, the defendant must make a testimonial record in the trial court in connection with a motion for a new trial or an evidentiary hearing. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Absent an evidentiary hearing, this Court's review is limited to the facts contained in the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

Further, this Court reviews the circuit court's decision on a motion for relief from judgment for an abuse of discretion and reviews the findings underlying the decision for clear error. *People*

---

[2] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

[3] *People v Wilkins*, unpub order.

*v Kasben*, 324 Mich App 1, 7; 919 NW2d 463 (2018). A trial court abuses its discretion when it misapprehends the law to be applied. *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). Additionally, when a motion to withdraw a plea is made after sentencing, the decision whether to grant it rests within the sound discretion of the circuit court, and it will not be disturbed on appeal unless there is a clear abuse of discretion resulting in a miscarriage of justice. *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). An abuse of discretion occurs when the circuit court's decision is outside the range of reasonable and principled outcomes. *People v Kammeraad*, 307 Mich App 98, 140; 858 NW2d 490 (2014).

Additionally, interpretation of a statute is reviewed de novo on appeal. *Sterling Hts v Chrysler Group, LLC*, 309 Mich App 676, 681; 873 NW2d 342 (2015). "The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Klooster v Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389; 559 NW2d 98 (1996). When a term is not defined by the Legislature, its meaning can be ascertained by turning to a dictionary. *Sanchez v Eagle Alloy Inc*, 254 Mich App 651, 668; 658 NW2d 510 (2003).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that he is entitled to relief from judgment because his trial counsel's ineffectiveness rendered his no-contest plea involuntary and he was actually innocent. We disagree.

A defendant has the right to the effective assistance of counsel. US Const, Ams VI and XIV; Const 1963, art 1 § 20; *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Generally, to establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different; and (3) that the resultant proceedings were fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). A defendant claiming ineffective assistance of counsel must demonstrate that counsel's performance was below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 684; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

As noted above, defendant entered a no-contest plea to CSC-I and felonious assault. A defendant who enters a no-contest plea waives any subsequent challenge to the prosecutor's ability to prove the defendant's factual guilt. *People v Cook*, 323 Mich App 435, 447; 918 NW2d 536, 542 (2018). However, "[a] defendant who has entered a plea does not waive his opportunity to attack the voluntary and intelligent character of the plea by arguing that his or her counsel provided

ineffective assistance during the plea bargaining process." *People v Horton*, 500 Mich 1034, 1034; 898 NW2d 590 (2017).

"A claim of ineffective assistance of counsel may be based on counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer." *People v Douglas*, 296 Mich App 186, 205; 817 NW2d 640 (2012), rev'd in part on other grounds 496 Mich 557 (2014). Counsel's assistance must be sufficient to enable the defendant "to make an informed and voluntary choice" whether to enter a plea or proceed to trial. *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). Once counsel has satisfied the obligation to inform his client of defenses and the consequences of pleading, he must abide by his client's decision. See *Effinger*, 212 Mich App at 71.

In this case, the lower court did not address whether trial counsel was ineffective or whether trial counsel's conduct affected defendant's ability to pursue a direct appeal. Nonetheless, defendant bears the burden to prove the factual predicate of his claim that defense counsel did not provide effective assistance. See *Hoag*, 460 Mich at 6.

We first note that although defendant's "statement of questions involved" suggests that trial counsel was ineffective for failing to advise him that evidence that his wife's injuries were self-inflicted would be important evidence in defendant's favor at a trial, defendant does not otherwise mention or present argument about the issue presented. "Failure to brief an issue on appeal constitutes abandonment." *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Accordingly, we conclude that this argument has been waived.

Notwithstanding such waiver, defendant suggests that counsel should have advised him that his wife's wounds could have been self-inflicted and that an expert could have established that the wounds were self-inflicted. However, there is no evidence within the record to support the proposition that the wounds may have been self-inflicted. Rather, we note that defendant's wife's testimony that defendant inflicted the wounds upon her with a knife was unrebutted. Counsel is not required to advocate every available defense, *Knowles v Mirzayance*, 556 US 111, 127; 129 S Ct 1411; 173 L Ed 2d 251 (2009), or take a meritless position, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). In whole, we find no support for the proposition that counsel should have presented or pursued such a defense theory.

Defendant further claims that defense counsel failed to advise him before his plea that the hospital's medical examination and the medical examination performed by Dr. Stephen R. Guertin yielded no evidence of sexual abuse or penetration. According to defendant, counsel failed to advise him that this was important evidence that weighed heavily in his favor. However, aside from defendant's self-serving statements within his affidavit, defendant provides no evidence that he was not provided with the reports themselves. Indeed, Dr. Guertin's report was referenced in the police report that defendant agreed would serve as the factual basis for the no-contest plea. Therefore, we are not persuaded that defendant did not know the contents of the police report and Dr. Guertin's report before he accepted them as the basis for his plea.

Further, while the prosecution appears to concede that the hospital medical report did not find evidence of sexual abuse, that report is not a part of the lower court record, and we are unable to reach a conclusion about the accuracy of defendant's statement. However, Dr. Guertin's report stated, "The child has a very prominent rugal fold from 11:00 to 12:00 in the anterior midline. This stretched skin can either be normal or *could be the consequence of sodomy*. She does not have a history or markedly large stools nor of recent constipation or painful defecation." The reference to sodomy within Dr. Guertin's report implies that he found that there was a possibility of sexual abuse.

Moreover, as noted above, defendant waived any subsequent challenge to the prosecutor's ability to prove the defendant's factual guilt by entering a no-contest plea. *Cook*, 323 Mich App 447. Nonetheless, the record suggests that if the case had proceeded to trial, EW would have also testified concerning the sexual acts against her, and a jury could have reasonably concluded that some of those sexual acts would be unlikely to leave any physical evidence of sexual abuse. Accordingly, we conclude that defendant has not overcome the presumption that counsel was effective. *Mack*, 265 Mich App at 129. Further, defendant has not shown that the outcome of the proceedings would have been different in the absence of the alleged error, given defendant's agreement that the reports served as the basis for his plea. *Lockett*, 295 Mich App at 187.

Defendant further posits that trial counsel was ineffective for failing to advise defendant that his wife's drug use raised issues about her credibility and could be exculpatory. More specifically, defendant alleges that his wife's use of Xanax and Zoloft and her "apparent mental state raises serious issues for the trier of fact." However, aside from this conclusory statement, defendant offers no support for his hypothesis that the trier of fact would have inferred that his wife was not credible on the basis of her use of prescribed medications. Moreover, there is no evidence within the lower court record that defendant had informed counsel of any concerns regarding his wife's mental health or drug use or that she suffered from any mental health concerns that would affect her credibility as a witness. As stated above, counsel is not required to advocate every available defense, *Knowles*, 556 US at 127, or take a meritless position, *Ericksen*, 288 Mich App at 201. Accordingly, on this record, we find no support for the proposition that counsel was ineffective in this regard.

Defendant also argues that defense counsel failed to advise him that his plea agreement was an illusory plea bargain. "[A]n illusory plea bargain is one in which the defendant is led to believe that the plea bargain has one value when, in fact, it has another value." *People v Williams*, 153 Mich App 346, 350; 395 NW2d 316 (1986). A plea may be void if it is illusory, and respondent does not benefit from the plea. *Corteway*, 212 Mich App at 446. In this case, defendant indicated in his affidavit that the sentence he received as a result of the plea agreement was "about the same sentence as if found guilty." However, defendant does not present any evidence to support his assertion that he gained nothing from the plea agreement. Rather, as the prosecution points out, defendant received a *Killebrew* plea bargain that allowed him to be sentenced to the very lowest minimum sentence that the law allows. But for the *Killebrew* sentence agreement, defendant may have received a greater sentence, particularly if convicted of more offenses. Indeed, the court's statements at sentencing suggest that while the court honored the parties' *Killebrew* plea agreement, the court did not feel that the sentence was sufficient. Accordingly, to the extent that defendant would be able to demonstrate the likelihood of a different outcome in his sentencing if he had not entered into a plea agreement, the record suggests that defendant's sentence may have

been more significant if he had proceeded to trial. In that regard, we conclude that defendant's plea agreement, which limited his sentence to 25 to 40 years' imprisonment, was to his benefit and was not illusory. *Corteway*, 212 Mich App at 446.

Defendant further argues that trial counsel's failure to retain an expert in juvenile interviews and forensic protocol or its own psychiatrist to counter Dr. Guertin's report constituted ineffective assistance. Defendant does not, however, provide any indication as to what testimony such an expert might have presented or how that testimony would have affected Dr. Guertin's testimony regarding EW's medical examination. Instead, defendant simply announces that counsel was ineffective for failing to retain an expert to discuss several parts of Dr. Guertin's report that suggest that Dr. Guertin did not follow the proper forensic interview techniques when questioning EW about sexual abuse. Defendant also posits that counsel's failure to identify and advise him of the weaknesses in regard to the forensic interview, including the fact that it could be considered "junk science," constitutes ineffective assistance of counsel because Dr. Guertin's report would likely have been inadmissible at trial. However, these arguments lack merit.

First, issues that are waived by a no-contest plea include the admissibility of evidence. See *People v Bulger*, 462 Mich 495, 517 n 7; 614 NW2d 103 (2000), overruled on other grounds by *Halbert v Michigan*, 545 US 605; 125 S Ct 2582; 162 L Ed 2d 552 (2005). Further, aside from his own opinions, defendant fails to provide support for his assertions of error in regard to the forensic examination. Additionally, defendant's argument is premised on the assumption that Dr. Guertin would have been called to testify about EW's statements. In this case, the prosecution responded that if there had been a trial, it would have called Dr. Guertin to testify concerning the physical examination of the victim, but not the statements made by the child victim. This statement is supported by the fact that during the preliminary hearing, Dr. Guertin was not called to testify. Instead, both defendant's wife and EW were present and available to provide testimony.

Moreover, although this Court has recognized before that "[t]rial counsel is responsible for preparing, investigating, and presenting all substantial defenses," *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009), "[c]ounsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). In light of the fact that the victim was both willing and able to testify concerning the incidents, we are not persuaded that retaining an expert simply to refute Dr. Guertin's interviewing techniques would have likely changed the results of the proceedings. Even if Dr. Guertin's testimony in regard to his interview was inadmissible, the victim was free to testify. Indeed, during the preliminary examination, EW had been found to be "mature enough and competent to testify." Accordingly, an investigation into the admissibility of Dr. Guertin's testimony related to the forensic interview would have been unnecessary and futile.

Defendant also claims that counsel was ineffective for failing to discuss the issue of competency with defendant given his distressed mental state at the time of these proceedings. Defendant posits that "[a] successful competency might have resulted in there never having been a trial or plea . . . ." However, this argument lacks merit.

A defendant who is incompetent "shall not be proceeded against while he is incompetent." MCL 330.2022(1). "[A] defendant is presumed competent to stand trial unless his mental

condition prevents him from understanding the nature and object of the proceedings against him or the court determines he is unable to assist in his defense." *People v Mette*, 243 Mich App 318, 331; 621 NW2d 713 (2000), citing MCL 330.2020. Either the court or any party may raise the issue "of a defendant's competence to stand trial." MCL 330.2024. Further, the trial court has an obligation to raise the issue of incompetence where facts raise a "bona fide doubt" as to the defendant's competence. *Kammeraad*, 307 Mich App at 138. "The test for such a bona fide doubt is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Id*. at 138-139 (citation and quotation marks omitted). A defendant's irrational behavior, demeanor, and prior medical record are relevant to the inquiry as to the defendant's competency. *Id*. at 139.

In this case, aside from indicating that he was distraught by the accusations, defendant does not present any evidence to support even the possibility that he was incompetent at the time of his plea, and no such evidence is apparent on the record. This is further buttressed by defendant's ability to participate in the plea hearing without exhibiting any irrational behavior or demeanor. In whole, our review of the record suggests that there is no evidence that defendant was "incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1). Accordingly, absent such a showing, we would be remiss to conclude that trial counsel should have referred defendant for a competency evaluation.

Defendant argues that trial counsel was also ineffective by failing to advise him that lifetime monitoring amounted to a total loss of privacy. However, this argument also lacks merit.

First, we note that defendant was informed by the court that he would be subject to a lifetime of electronic monitoring, as well as mandatory AIDS and STD testing, and he acknowledged this by replying, "Yes, your Honor." A defendant is not permitted to claim that he or she was confused about the consequences of a plea after stating on the record that he or she understood the same. *People v Everard*, 225 Mich App 455, 460-461; 571 NW2d 536 (1997).

Additionally, as indicated in defendant's brief, our Supreme Court, in *People v Cole*, 491 Mich 325, 337; 817 NW2d 497 (2012), stated, "[W]hen the governing criminal statute mandates that a trial court sentence a defendant entering the plea that he or she will be subject to mandatory lifetime electronic monitoring, due process requires the trial court to inform the defendant entering the plea that he or she will be subject to lifetime electronic monitoring." The Supreme Court also indicated that "because MCR 6.302 is premised on constitutional due process requirements, a defendant who will be subject to mandatory lifetime electronic monitoring must be so advised by the trial court at the time of the plea hearing in order to satisfy the court rule's requirement that the plea be understanding and voluntary." *Id*. Ultimately, defendant himself concedes that "the court complied with the court rules."

Nonetheless, defendant argues that he should have been provided additional information explaining what lifetime electronic monitoring meant and suggests that without such information, he could not properly understand the circumstances of his plea. However, defendant cites no authority for his assertion that he should have received additional information to ensure that he understood what lifetime monitoring ultimately meant, and we find no such authority.

Further, defendant suggests that the Merriam-Webster Dictionary definition of "monitor" provides no guidance on this matter. However, defendant's argument relies on the dictionary definition of the *noun* "monitor," whereas the *verb* "monitoring" is defined as "to watch, keep track of, or check usu. for a special purpose." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 801. This definition is consistent with the definition and purposes identified by our Legislature within MCL 791.285, which states in relevant part:

> The lifetime electronic monitoring program shall accomplish all of the following:
>
> (a) By electronic means, track the movement and location of each individual from the time the individual is released on parole or from prison until the time of the individual's death.

Accordingly, we are not persuaded that defendant was owed any further information. Moreover, MCL 750.520n states:

> (1) A person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring as provided under section 85 of the corrections code of 1953, 1953 PA232, MCL 791.285.

Accordingly, whether defendant's sentence was based on a plea or jury trial, he would remain subject to electronic monitoring, and the outcome of the proceeding would not have been different. In sum, defendant has failed to persuade us that counsel was ineffective in this regard or that counsel's performance prejudiced him.

Defendant argues that in light of trial counsel's evaluation of the case as "hopeless" and failure to engage in the proper investigations and discussions identified above, his plea was not knowing and voluntary and should be set aside. Generally, the test of the validity of a plea is whether it was knowingly, voluntarily, and intelligently given. *People v Gonzalez*, 197 Mich App 385, 391; 496 NW2d 312 (1992). "A defendant seeking to withdraw his or her plea after sentencing must demonstrate a defect in the plea-taking process." *People v Brown*, 492 Mich 684, 693; 822 NW2d 208 (2012).

A court may not accept a plea of guilty unless it "is understanding, voluntary, and accurate." MCR 6.302(A). For a plea to be understanding, the defendant must be informed of the maximum possible prison sentence, as well as any mandatory minimum sentence required by law. MCR 6.302(B)(2); *Brown*, 492 Mich at 689. For a plea to be voluntary, the terms of the plea agreement must be disclosed, and the plea must be the "defendant's own choice." MCR 6.302(C)(4)(c). For a plea to be accurate, the court must establish support for a finding that defendant is guilty of the offense to which defendant is pleading. MCR 6.302(D)(1).

However, aside from his largely unsupported claims that counsel was ineffective, defendant does not present any facts to support a conclusion that his plea was not intelligent, knowing, and voluntary. He also provides no evidence to substantiate his claims that trial counsel "always urged guilty pleas." Further, as discussed above, we find no evidence in the record to support a conclusion that trial counsel was ineffective or that trial counsel's performance prejudiced defendant. Moreover, the court informed defendant of the charges to which he was

-8-

pleading, the minimum and maximum penalties, and the rights defendant was giving up by entering the plea. Defendant expressly acknowledged his rights and the information provided by the court and confirmed that he was entering a plea by his own choice. Accordingly, the record supports a conclusion that the court took the necessary steps to ensure that defendant's plea was knowingly, intelligently, and voluntarily made.

Lastly, defendant posits that he should be granted relief from judgment because he is actually innocent. To prevail on a motion for relief from judgment on grounds that could have been raised in a prior appeal, a defendant must show good cause for the failure to raise the grounds in the prior appeal. MCR 6.508(D)(3)(a). In addition to showing good cause, the defendant must show actual prejudice arising from the alleged errors. MCR 6.508(D)(3)(a), (b). The defendant may show actual prejudice with respect to a plea-based conviction by demonstrating that the alleged error "was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand" or that "the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case." MCR 6.508(D)(3)(b)(*ii*), (*iii*). Otherwise, the court may waive the good-cause requirement if the court concludes that "there is a significant possibility that the defendant is innocent of the crime." MCR 6.508(D)(3).

Defendant cites several cases related to the doctrine of actual innocence and the retroactive effect of the doctrine. However, defendant fails to present any meaningful argument about how he can establish a showing of actual innocence based on the facts of this case. Indeed, aside from his self-serving assertion within his affidavit and brief that he was actually innocent, defendant fails to show a significant probability of his innocence. Additionally, before the lower court and within this appeal, defendant failed to present any evidence to refute the undisputed testimony of the victims in the case. As noted above, defendant's failure to brief an issue on appeal constitutes abandonment. Further, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Moreover, because defendant has not established that trial counsel was ineffective or the significant probability of his innocence, he has also failed to show good cause under MCR 6.508(D). In sum, the trial court did not abuse its discretion by denying defendant's motion for relief from judgment on the basis of ineffective assistance of counsel.

Affirmed.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan

-9-